535 A.2d 955

**Donald K. COCHRAN et al.**

v.

**Robert ANDERSON.**

No. 547, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Jan. 14, 1988.

---

D.S. Sastri, Arthur S. Drea, Jr. on brief, Hyattsville, for appellants.

Timothy E. Clarke, Kenary & Clarke, Chartered on brief, Rockville, for appellee.

Argued before WILNER, BISHOP and ROSALYN B. BELL, JJ.

WILNER, Judge.

The question before us is whether the Circuit Court for Montgomery County overstepped its bounds when, on March 19, 1987, it ordered the Maryland–National Capitol Park and Planning Commission (the Commission) and the Commission's Director of Parks to terminate all proceedings brought against Lt. Robert Anderson under the Law Enforcement Officers Bill of Rights (LEOBR) and to reinstate him to his former status. We believe that it did—not because it was without authority to enter such an order but because it acted precipitously and on an incorrect basis.

The full procedural history of this case is important to the issues raised, but unfortunately it is not succinctly set forth in the record; some parts of it we must piece together from the various pleadings, orders, and exhibits. We may start, however, with the undisputed fact that Lt. Anderson was

and is a police officer employed by the Commission and that, as such, he is subject to both the Commission's merit system rules and regulations and to LEOBR (Md.Code Ann. art. 27, §§ 727–734D).

It appears that at some point in the spring of 1985, the Commission undertook an internal investigation into complaints that Lt. Anderson and one other officer had engaged in racial and sexual harassment. In June, 1985, while the investigation was in progress, Anderson received his regular annual performance evaluation. His immediate supervisor recommended an evaluation of "very good." That recommendation, concurred in by the Park Police Division Chief, was sent to the Director of Parks for final approval. The Director, aware of the ongoing investigation, took no action on the recommendation, prompting Lt. Anderson, in August, 1985, to file a grievance. That grievance was denied on December 13, 1985.

Six days later, the investigation was completed; from it the Director concluded that Lt. Anderson had indeed engaged in sexual and racial harassment. The basis of the former was that he had made "inappropriate and disparaging comments regarding the anatomy of two female officers on separate occasions"; as to the latter, the Director found that appellant had made a "racially derogatory comment towards a minority officer." As a result, the Director (1) revised Lt. Anderson's 1985 performance evaluation from "very good" to "marginal," and (2) suspended him without pay for five days and assigned him to participate in "Supervisory Techniques and Sensitivity Awareness Training Programs."

On December 26, through counsel, Lt. Anderson wrote to general counsel to the Commission complaining about the Director's action. The letter, he said, "is notice of an appeal of this evaluation decision." Responding eight days later, general counsel advised that he would treat the December 26 letter as both an appeal to the Commission's merit system board from the evaluation decision and as a demand under LEOBR "for a trial board hearing of the

charges of sexual and racial harassment." In that latter regard, he said that he had advised the Chief of Police "to appoint a three-member trial board and to begin the necessary scheduling of the hearing" and that he had designated an attorney from his office to represent the Commission. He concluded his letter by saying that "[i]t is certainly not our intention to unnecessarily complicate or to draw out this matter and so we will move as promptly as possible."

The Commission had adopted regulations governing proceedings under LEOBR. They provided, in relevant part, that (1) a trial board would be appointed within five days after the Chief received notice that the accused officer refused to accept the disciplinary measures, (2) at least 10 days before the hearing, the officer would be notified of the names of witnesses and furnished with a copy of the investigatory file, excluding the identity of confidential sources, (3) upon appointment, the trial board chairman would receive from the Chief the date, time, and location of the hearing, and (4) hearings "will commence thirty (30) days after notification is sent to the Accused." See LEOBR Bi–County Directive, 7/30/84, Parts VII and VIII. These provisions were no doubt designed to implement the policy expressed in Part II of the Directive "to provide a thorough, fair, *and expeditious* disposition of complaints regarding the conduct of M–NCPPC Park Police officers." (Emphasis added.)

It appears that, in general accordance with these regulations, a trial board hearing was scheduled for January 16, 1986. By January 10, however, Anderson had not received a list of witnesses, a statement of charges and specifications, or other "discovery." The hearing was postponed; on February 6, Anderson and the Commission agreed that the merit system board hearing, scheduled for March 10, should precede the trial board hearing, and so the latter was again postponed.

We are informed that, at the conclusion of the March 10 merit system board hearing, the board orally granted the Commission's motion to dismiss the appeal; in contraven-

tion of its own rules, however, it failed to render a written decision until June 25, 1986. At some point—whether before or after rendition of the written decision is not clear— Lt. Anderson appealed the decision of the merit system board to the Circuit Court for Montgomery County. On March 26, 1986, he wrote to the Director of Parks requesting "the prompt scheduling of a Trial Board Hearing" under LEOBR, noting his understanding that "the members of the Hearing Board have already been established."

On April 23, 1986, having received no response to his letter, Lt. Anderson filed this action in Circuit Court complaining about the alleged violations of his rights under LEOBR and the Commission's implementing regulations and seeking an order terminating the investigation. The Commission responded that a trial board hearing had been deferred pending the written decision of the merit system board, which had not, as of then, been issued. At a hearing held on May 21, the court denied the relief requested by Lt. Anderson. A formal order to that effect, denying the relief "at this time," was filed by the court on July 16, 1986.

On June 30, 1986, Anderson made a written demand for a statement of charges, trial board appointment, and hearing date. On July 10, he made another such demand. On July 16, in some sort of hearing in the Circuit Court, presumably in connection with the initial complaint, counsel for the Commission stated that a hearing "would be promptly held." On September 30, following a note from Commission counsel indicating that the attorneys would confer on the Anderson matter at some future time, counsel for Anderson responded:

"As I have previously indicated, we are anxious to meet with you. However, under no circumstances am I authorized to have any delay to the already illegally delayed proceedings.

Let me reiterate what I have already said to you. The Commission has received an Order from the Court to act. The Commission has chosen not to act. In my opinion the Commission is in contempt of Court and I shall pursue

that remedy with vigor unless there is an immediate settlement of *all* issues in this matter. Furthermore, Lt. Anderson still has not received a hearing although promised one and entitled to one by law. We have done everything which we can possibly do in order to get the Commission to obey the law. The Commission has chosen not to obey the law. You are well aware that the proceedings involving Lt. Anderson are now so fatally flawed that to go forward now borders on vindictiveness by the Director. This matter must be resolved. The Commission and all aspects of the Commission's behavior will be aired fully in the proceedings involving Lt. Anderson unless there is an immediate settlement of *all* issues in this matter."

(Emphasis in original.)

Hearing nothing further from the Commission, Lt. Anderson filed a First Amended Complaint on January 19, 1987, in which, after incorporating the averments of his initial complaint, he again complained about the failure of the Director and the Commission to convene a trial board hearing and asked that all further proceedings be enjoined. The next day, January 20, the court signed an order directing the Director and the Commission to appear before the court in person on February 23, 1987, to show cause why the relief prayed should not be granted. Because of a snowstorm on February 23 that closed the court, the defendants did not appear. Nor did they file any written response to the show cause order.

On February 13, 1987, the Circuit Court issued a ruling in Anderson's appeal from the merit system board decision. While the court concluded that there was no violation of *the merit system law* in the Director's first postponing a decision on Anderson's 1985 performance evaluation and then changing the evaluation from "very good" to "marginal," it made clear that, to the extent that there was a conflict or overlap between the merit system procedures and LEOBR, the latter would prevail. Because the board had not considered or ruled upon Lt. Anderson's charge that the per-

formance evaluation process had been used "in a manner inconsistent with the procedural guarantees provided for in the LEOBR" and because the record was not "very well developed on this point," the court remanded the case to the board

> "to convene a new hearing on the issue of whether the actions taken by the Commis[s]ion and the methods utilized to change the appellants' performance evaluations were appropriate, discretionary management decisions within the purview of the Merit System and Art. 27, Sect. 728(c), or whether this process was utilized to sidestep the procedural guarantees of the LEOBR."

Finally, on March 19, 1987, the court took up the First Amended Complaint. The defendants had not, as of then, filed an answer to the show cause order, believing that, as the order required a personal appearance, they were not required to file an answer. The court summarily rejected any such notion and concluded that they had not complied with the show cause order. It then allowed defense counsel 60 seconds to make a statement. Remaining unpersuaded, it confirmed its decision to grant most of the relief sought by Lt. Anderson and promptly signed an order directing the Commission and the Director (1) to terminate all investigations, hearings, and other proceedings under LEOBR, and (2) to reinstate Lt. Anderson to his former status with all pay increments to which he would be entitled but for the investigation.

The Commission and the Director appeal that order, complaining that (1) the court had "no jurisdiction" to enter it, (2) the court denied them a fair hearing, and (3) the reinstatement provision is barred by *res judicata* or collateral estoppel by reason of the court's February 13 order in the merit system appeal.

### (1) Jurisdiction

LEOBR was enacted "to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to

disciplinary action, demotion, or dismissal." *Abbott v. Administrative Hearing Bd.*, 33 Md.App. 681, 682, 366 A.2d 756 (1976), *cert. denied* 280 Md. 727 (1977); *Chief, Balto. Co. Police v. Marchsteiner*, 55 Md.App. 108, 461 A.2d 28 (1983). As we pointed out in *Abbott*, those safeguards include standards governing the investigation of complaints against an officer, the right to a hearing following a recommendation for disciplinary action, and standards governing the conduct of such a hearing and the decision of the hearing board. See also *Elliott v. Kupferman*, 58 Md.App. 510, 473 A.2d 960 (1984).

LEOBR provides for two areas of judicial review. Section 732 of art. 27 permits an appeal to the Circuit Court from a *decision* rendered by the police chief following the findings and recommendations of a hearing board. That is the traditional form of judicial review to which Md.Rules B1–B13 apply. As there has been no such decision in this case, § 732 is not applicable here. Section 734 is broader; it provides:

"Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded."

That is the section relied upon by Lt. Anderson; it is also the only section that arguably can support the court's action. The defendants look at that provision and see nothing in it authorizing a court to terminate an LEOBR proceeding. With a certain measure of *chutzpah*, given the history of Lt. Anderson's unsuccessful efforts since December, 1985, to obtain a trial board hearing, the defendants urge that "[t]he right is the right to be heard by the Trial Board. He [Lt. Anderson] cannot ask for the relief of

termination of the hearing, there is no statutory basis for that." [1]

It is true that § 734 says nothing about the authority of a court to call a halt to administrative proceedings; and, ordinarily, that would be a wholly inappropriate thing for a court to do. *Cf. Elliott v. Kupferman, supra,* 58 Md.App. 510, 525, 473 A.2d 960, where we rejected a "bald allegation that appellees failed to provide a trial board," observing that the officer had given "no substance to the complaint: over what period of time did they fail to constitute a trial board, was it a passive omission or one designed to circumvent his right to a hearing on the charges, did he request a trial board?" In sharp contrast to the situation there, however, Lt. Anderson has pled and documented a clear and sustained effort for more than a year to have a trial board constituted and to have the charges against him resolved, as well as an equally clear and sustained denial of that right by the defendants. The matter had been to court once before, in May, 1986; it seems evident that, for whatever reason, the defendants simply were unwilling to comply with the law.

Under these circumstances, § 734 must necessarily include the right of the court to end the matter. As we have indicated, § 734 is not a general judicial review provision; unlike § 732, it does not presuppose a final decision of the administrative agency that is ripe for review. It is a very special provision, allowing resort to the court "prior to the commencement of the hearing before the hearing board." The purpose of that provision obviously is not to review what the trial board or police chief *has done* but to assure that the police agency *will do* what the law requires. In that setting, it is evident that the limited options available to a court under Md.Rule B13 in the more traditional review

---

**1.** Although the defendants have couched their argument in jurisdictional terms, the issue is not really one of jurisdiction but rather the propriety of the court's exercise of jurisdiction. Section 734 necessarily vests the Circuit Court with jurisdiction to consider and resolve this kind of complaint.

(affirm, reverse, modify, remand, or dismiss the appeal) may not be adequate or even relevant. In most instances, injunctive or mandamus relief will suffice; the court can order the agency to act in conformance with the law and, if necessary, enforce its order through contempt or other appropriate proceedings. But where, as here, the agency's own rules require a prompt hearing and the evidence shows that, for some 15 months, despite constant demands, several promises, and one earlier court appearance, the agency has steadfastly and wrongfully flouted that requirement, the court must also have the power to enforce the law by terminating the proceeding. There comes a point when, through the passage of time, orders to act *in futuro* may simply be inadequate. Although the analogy is not an exact one, the situation is not unlike the denial of a speedy trial or the failure to prosecute a civil action, a proper remedy for which is dismissal of the complaint.

For these reasons, we conclude that, in a proper case under § 734, a court may order termination of the LEOBR proceeding.

### (2) Fair Hearing

To say that the court was curt with defense counsel is by no means an overstatement. The court jumped immediately to the conclusion that, by failing to file a written response to the January 20 show cause order, the defendants had not complied with that order and that Lt. Anderson was entitled to the principal relief sought. It announced that conclusion at the very outset of the hearing and never retreated from it. After reviewing the order proposed by Lt. Anderson, it decided to grant all the relief except his request for attorneys' fees. The relevant colloquy was as follows:

"THE COURT: All right. Well, I am going to grant your relief as to the first two items, but as to the third, I am not going to grant it.

MR. SASTRI [Defense counsel]: May I be heard, Your Honor?

THE COURT: Mr. Sastri, I do not think that you people have complied with Judge Ruben's show cause order, and you can go down to the Court of Special Appeals and maybe they will—

MR. SASTRI: There is something more that I would like to submit, Your Honor.

THE COURT: Well, the only thing that I have to do is to decide—the only reason we are here today is the show cause order that required you people on or before the 23rd day of February to show cause. As far as I am concerned you have not shown any cause. So, having shown no cause the Court is entitled to assign [*sic*] this order. I am not going to require you to pay Mr. Clarke's attorney's fees because—

MR. SASTRI: There is a little more that Your Honor will—that are germane to these proceedings.

THE COURT: Go ahead, you got 60 seconds."

Counsel took his 60 seconds, following which the court responded, "I am signing the order, and that is the end of that."

■ We have a dual concern with what occurred. First and foremost, the court was manifestly wrong in concluding that the defendants had failed to comply with the show cause order. The order did not require a written response but rather a personal appearance. Its operative provision was that the defendants

"appear in this Court for a hearing at Montgomery County Judicial Center, 50 Courthouse Square, Rockville, Maryland 20850 *in person* on the 23rd day of February, 1987 at 10 o'clock A.m. for a hearing to Show Cause, if any they have [why the specific relief sought by Lt. Anderson should not be granted]."

(Emphasis added.) The defendants were not in violation of that order. If indeed the courthouse was closed on the morning of February 23, 1987, there is no way that they could have achieved compliance. They presented them-

selves at the rescheduled hearing prepared to offer their defense, which was all that the order obliged them to do.

■ Our second concern emanates from the first. As we observed in Part (1) of this Opinion, although we believe that the court has the power under § 734 to terminate an LEOBR proceeding, that is an extraordinary form of relief that ought not to be granted except in the most unusual case. The purpose of § 734 is to enforce the accused officer's rights under the Act, not to restrict the agency's legitimate right to discipline errant officers. Before issuing an order terminating an LEOBR proceeding, the court must give careful consideration to all of the underlying facts and circumstances—the nature and severity of the alleged infraction by the officer, the nature and severity of the agency's noncompliance with required procedures, and what, if any, irreparable prejudice has been suffered by the officer by reason of that noncompliance. It must also have some reasonable basis for concluding that less drastic relief—injunctive or mandamus-type relief—would be inadequate or inappropriate.

■ We are not convinced that the court gave that kind of consideration in this case. The notion that the defendants were in violation of the show cause order seemed to color its thinking and its ultimate decision. We shall therefore vacate its order and remand for a rehearing. At that rehearing, the court can give consideration as well to the defendants' third argument here—the effect of the February 13, 1987 decision in the merit system appeal. In that regard, it will, of course, consider *Abbott v. Administrative Hearing Bd.*, *supra*, 33 Md.App. 681, 366 A.2d 756, *Chief, Balto. Co. Police v. Marchsteiner*, *supra*, 55 Md.App. 108, 461 A.2d 28, and other relevant cases dealing with the interplay between LEOBR and local merit systems. Exercising our discretion under Md.Rule 1082 a, we shall divide the costs of this appeal.

JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FUR-

THER PROCEEDINGS; COSTS TO BE PAID ONE–HALF
BY APPELLANTS, ONE–HALF BY APPELLEE.