784 A.2d 627

**MASS TRANSIT ADMINISTRATION**

v.

**Paul HAYDEN.**

**No. 2260, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 2, 2001.

Irwin Brown, Baltimore, for appellant.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for appellee.

Argued before ADKINS, CHARLES E. MOYLAN, Jr., (Retired, Specially Assigned) and PAUL E. ALPERT (Retired, Specially Assigned), JJ.

ADKINS, Judge.

This case involves a police officer's efforts to protect his right to summon a witness to a disciplinary proceeding. It requires that we construe section 734 of the Law Enforcement Officers' Bill of Rights ("LEOBR"), Md. Code (1957, 1996 Repl. Vol.), Art. 27, § 734, and address how the right of appeal

in that section inter-relates with an appeal under section 732 of LEOBR.

This appeal presents two questions:

I. Did appellee have standing to bring a petition for pre-hearing relief under LEOBR section 734?

II. May the circuit court disturb a final administrative decision based on a petition brought under section 734 of LEOBR, or may it only alter a final agency decision when presented with an appeal under section 732?

We conclude that appellee had standing to file a petition under section 734 because he was denied the right to summon a witness under LEOBR section 730(j). Further, we hold that the circuit court, in the course of deciding appellee's section 734 appeal, properly vacated the decision on the merits of the disciplinary case. We shall affirm the circuit court's decision to remand appellee's case for a new administrative hearing.

## FACTS AND LEGAL PROCEEDINGS

Maryland Transit Authority ("MTA"), appellant, employed Paul Hayden, appellee, as a transit law enforcement officer. Hayden was assigned to the Light Rail Division. MTA charged Hayden with several violations of agency policy, including failing to carry a weapon while responding to a call, improperly using emergency equipment on a police vehicle, and inadequately supervising subordinates. An administrative hearing to consider these charges was originally scheduled before a hearing board convened under LEOBR for May 7, 1999, but later rescheduled to July 2, 1999. Because the officer originally named to chair the hearing board retired, Lt. Richard Wheeler was appointed chair in his place, by order dated May 16, 1999.

Hayden testified that he learned Wheeler had been appointed as substitute chair on May 21, 1999. He also claimed that he had provided a list of mitigation witnesses, including Lt. Wheeler, to his attorney on April 28, 1999. Hayden included Lt. Wheeler on the witness list because he had worked for him for a period of approximately eight years, and believed that he

would be able to testify as to Hayden's work habits during that time. At the time he submitted the witness list to his attorney, Hayden believed another officer would be chairing the hearing board. Hayden did not file his witness list with MTA, however, until June 22, 1999.

After seeing his name on Hayden's witness list, Wheeler asked Hayden whether it was a mistake that his name was included on the list. It is unclear from the record exactly when this conversation took place. According to Wheeler, Hayden responded that his attorney had advised him that putting Wheeler's name on the witness list would mean Wheeler would have to withdraw as chair of the hearing board. Wheeler then sought the advice of MTA counsel. He had no further personal contact with Hayden until the hearing.

A preliminary meeting was scheduled for July 1, 1999, "to discuss all outstanding issues." Hayden testified that he received notice of this meeting by letter, and that he was aware the issue of Wheeler being named as a witness would come up at that meeting. Neither Hayden nor his attorney attended the meeting.

The next day, on July 2, 1999, the administrative hearing was commenced. Both Hayden and his attorney were present. At the start of the hearing, the hearing board addressed Hayden's preliminary motion to sequester witnesses, including Wheeler. The board noted that this motion raised the issue of whether Wheeler could be summoned and, therefore, whether Wheeler could continue to chair the hearing board. At the end of the hearing, Wheeler stated that he would remain chair of the hearing board, and that the board would not issue a summons requiring him to testify.

> After meeting with the Board members and consulting with the Board's legal advisor . . ., the decision of the Board was not to issue a summons for Lt. Wheeler as it is an improper use of a summons to change a Board member and that I will remain as the Board Chairman and reaching a decision in this case, it is on the record that the Board will restrict all

conclusions to the evidence as presented to the Board and nothing else.

In response, Hayden's attorney advised that he would be going to court that day to get a show cause order. Wheeler then replied, "O.K. I presume at this point the Board will sit in adjournment and re-proceed whenever the court's made a decision. Would that [be] a correct response." At this point, all parties agreed to await the circuit court's decision on Hayden's section 734 petition. The hearing board adjourned until October 14, 1999, to allow time for that resolution.

Four days later, on July 6, 1999, Hayden filed a petition in the Circuit Court for Baltimore City seeking an order "to show cause why he should not be afforded his rights under the LEOBR to call witnesses of his choice." The court issued a show cause order on July 9, 1999. MTA answered the order on August 3, 1999.

The circuit court did not hold a hearing on Hayden's section 734 petition before the October 14 date that the hearing board set to reconvene. On October 20, 1999, Lt. Wheeler notified Hayden that the hearing board would proceed with the disciplinary hearing. In a letter to Hayden's attorney, Wheeler explained why.

> MTA has consistently attempted to elicit any proffer of testimony which you would expect in my role as a potential witness. You have refused to attend a pre-hearing meeting in an attempt to resolve this, and ... I have no personal knowledge as to your client's performance which would enable me to be a competent witness on his behalf. I still await to hear any proffer from you to the contrary.
>
> Because of this, there seems to be no valid reason why this administrative proceeding can't proceed as planned.... We will convene the Board as previously scheduled. At that time, if a proffer is made which would indicate that I, as Chairman of the Board, could be a competent mitigation witness on your client's behalf, then, and only then, will this Board take action to ensure that a replacement Chairman is appointed.

The next day, on October 21, 1999, the hearing board resumed the disciplinary proceedings against Hayden. With the circuit court proceeding on Hayden's petition under section 734 still pending, the hearing board, chaired by Wheeler, considered MTA's charges of misconduct. Neither Hayden nor his attorney was present at the hearing. On October 26, the board found Hayden guilty of the three charges against him, and recommended a 14 day suspension. On February 17, 2000, the police chief adopted that recommendation, and ordered Hayden's suspension.

More than one year after the hearing board issued its recommendation, on October 27, 2000, the circuit court issued its decision on Hayden's petition. It reversed the hearing board's decision to deny Hayden's request to summon Wheeler, and vacated the disciplinary order against Hayden. MTA filed this appeal.

## DISCUSSION

### I.

### The Hearing Board's Denial Of Appellee's Request To Summon Lt. Wheeler As A Witness Under LEOBR Section 730(j)

LEOBR was enacted "to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal." *Abbott v. Admin. Hearing Bd.*, 33 Md.App. 681, 682, 366 A.2d 756 (1976), *cert. denied*, 280 Md. 727 (1977). Section 734 of LEOBR provides that

[a]ny law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board ... to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.

The purpose of section 734 is "to enforce the accused officer's rights under the Act, not to restrict the agency's legitimate right to discipline errant officers." *Cochran v. Anderson,* 73 Md.App. 604, 616, 535 A.2d 955 (1988).

In his petition to the circuit court, Hayden asserted that the hearing board denied his right to summon an important witness under LEOBR section 730(j),[1] by refusing to summon Wheeler as a witness, or to force Wheeler to withdraw as chairman of the hearing board. The circuit court agreed. Based on Hayden's section 734 petition, it reversed the hearing board's denial of the summons, vacated the disciplinary order, and remanded for a new administrative hearing.

On appeal, MTA asserts that at the time Hayden filed his petition in the circuit court, he had not been "denied any right afforded" under LEOBR. Without such a denial, it argues, Hayden had no standing to seek relief under section 734. MTA relies on the hearing board's request that Hayden submit a proffer of Wheeler's expected testimony before the board ruled on Hayden's request to summon Wheeler as a witness. It insists that because Hayden failed to respond to the board's proffer request, the board never actually *denied* Hayden the right to call Wheeler as a witness.

We are not persuaded by MTA's contentions. Requiring a proffer before issuing a summons in an administrative hearing is approved procedure. *See Forman v. MVA,* 332 Md. 201, 208, 630 A.2d 753 (1993). There is nothing in the record,

---

**1.** Section 730(j) provides in relevant part:

*Summonses.*—(1) The chief, or hearing board ... shall in connection with any disciplinary hearing have the power to ... issue summonses to compel the attendance and testimony of witnesses.... Any party may request the chief or hearing board to issue a summons or order under the provisions of this subtitle.

(2) In case of disobedience or refusal to obey any of these summonses, the chief, or hearing board, may apply to the circuit court ... for an order requiring the attendance and testimony of the witness ..., without cost. Upon a finding that the attendance and testimony of the witness ... is relevant or necessary, the court may issue an order requiring the attendance ... without cost, and any failure to obey any order of the court may be punished by the court as a contempt thereof.

however, to indicate that the hearing board requested a proffer before the July 2, 1999 hearing, at the end of which the board denied Hayden's request to summon Wheeler as a witness. The hearing board explicitly stated that "the decision of the Board was not to issue a summons for Lt. Wheeler as it is an improper use of a summons to change a Board member and ... [Wheeler] will remain as the Board Chairman[.]" The record before us shows that the hearing board did not request a proffer from Hayden until October 20, 1999, more than three months after it denied Hayden's request for a summons, and after Hayden obtained a show cause order from the circuit court.[2]

■ We hold that Hayden had standing to petition for relief under section 734 because the hearing board denied his request to summon a witness. Even though we agree with MTA in principle that the "right to compulsory process is not absolute," we cannot conclude that the hearing board's *post hoc* demand for a proffer somehow "undid" its denial of Hayden's request. For this reason, we reject MTA's complaint that a proffer was necessary to prevent Hayden from tactically abusing his right to call witnesses.

## II.

### The Circuit Court's Use Of LEOBR Section 734 To Vacate A Final Decision Of The Hearing Board

MTA argues that the circuit court erred when it construed section 734 as the proper vehicle for Hayden to seek an order vacating the decision to suspend Hayden. MTA asserts that an officer may appeal from a final agency decision, and that the circuit court may grant relief, only under LEOBR section 732. Section 732 allows an officer to challenge a "decision"

---

**2.** We were not persuaded by the MTA's assertion, during oral argument, that Hayden's mere awareness that the issue of Wheeler being called as a witness might come up during the preliminary meeting called on July 1, 1999 implies that the MTA or the board was requesting a proffer before the July 2, 1999 hearing.

rendered by the police chief following the findings and recommendations of the hearing board.[3] *See* § 732. In essence, MTA asks us to hold that Hayden's section 734 claim became moot on October 26, 1999, the date that the hearing board rendered its decision and recommendation. Hayden counters that interpreting the statute as MTA advocates would allow MTA and hearing boards to circumvent an officer's section 734 rights. He suggests that a hearing board, in the face of an officer's petition to show cause, could expedite the disciplinary hearing, and, by reaching a quick decision, moot the officer's section 734 appeal.

In construing a statute, our task is "to discern and effectuate the intent of the Legislature." *FOP, Montgomery County Lodge No. 35 v. Mehrling*, 343 Md. 155, 173–74, 680 A.2d 1052 (1996). "The words actually used in the statute, and their 'plain meaning' are the best indicator of that intent." *State Dep't of Assessments and Taxation v. Maryland–National Capital Park and Planning Comm'n*, 348 Md. 2, 11 n. 9, 702 A.2d 690 (1997). When a statute is silent about an issue, we should consider its purpose in construing it to address that issue. *See Papillo v. Pockets, Inc.*, 119 Md.App. 78, 87, 704 A.2d 448 (1997). "[W]e construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme." *Blondell v. Baltimore City Police Dep't*, 341 Md. 680, 691, 672 A.2d 639 (1996). The statute should be construed so as to avoid an "illogical or unreasonable result, or one which is inconsistent with common sense." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986).

"[I]n ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and ... all parts are to be reconciled and harmonized if possible." *Thomas v. Police*

---

3. Section 732 provides that "[a]ppeal from decisions rendered in accordance with § 731 shall be taken to the circuit court...." Decisions rendered under section 731 include "[a]ny decision, order, or action taken as a result of" a disciplinary hearing.

*Comm'r of Baltimore City,* 211 Md. 357, 361, 127 A.2d 625 (1956). "If there is no clear indication to the contrary, and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory." *Id.*

Following these canons of statutory interpretation, we look first to the plain language of section 734. Section 734 indicates that the Legislature intended to give police officers facing disciplinary charges the unusual right to appeal to a higher authority before the administrative hearing begins. In this respect, section 734 differs from section 732, which was designed as the mechanism for an officer to challenge a final administrative decision. As we said in *Cochran,* "section 734 is not a general judicial review provision.... It is a very special provision, allowing resort to the court 'prior to the commencement of the hearing before the hearing board.'" *Cochran,* 73 Md.App. at 613, 535 A.2d 955 (quoting LEOBR § 734).

The plain language of section 734, however, does not speak directly to the question of what should happen to the underlying administrative proceeding while a section 734 petition is pending in circuit court. Thus, consistent with well established canons of statutory interpretation, we must construe section 734 in light of its objectives and purpose.

In *Cochran,* we recognized that "LEOBR was enacted 'to guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action[.]'" *Id.* at 611–12, 535 A.2d 955 (citing *Abbott v. Admin. Hearing Bd.,* 33 Md. App. 681, 682, 366 A.2d 756 (1976), *cert. denied* 280 Md. 727 (1977)). "The purpose of [section 734] ... is not to review what the trial board or police chief *has done* but to assure that the police agency *will do* what the law requires." *Id.* at 613, 535 A.2d 955. In light of this purpose, we held that although section 734 does not grant the circuit court explicit authority to terminate administrative proceedings, under certain circum-

stances, "[section] 734 must necessarily include" that authority. *Id.* at 613, 535 A.2d 955.

 The instant case presents an analogous question that is not resolved by explicit language in LEOBR. We conclude that although section 734 does not grant the circuit court explicit authority to vacate an administrative decision that resulted from an improper denial of an officer's procedural rights under LEOBR, section 734 must necessarily include that authority. *See id.* To moot a section 734 action because it is not resolved before the administrative hearing that it challenges would defeat the "pre-hearing review" purpose of that statute. Section 734 provides that an aggrieved officer must *file* his petition to show cause before the administrative hearing. Thus, if an officer does not petition the circuit court for relief prior to the administrative hearing, he or she cannot use section 734 to challenge the administrative decision after the fact. When, however, an officer timely files a section 734 petition, the purpose of section 734—"to assure that the police agency *will do* what the law requires"—mandates that the circuit court's section 734 decision, rather than the administrative decision handed down in the meantime, govern the outcome. *See id.* Any other interpretation would render section 734, and an officer's right to a pre-hearing remedy, a nullity. Further, to require an officer in appellant's position to file two appeals, one under section 734, and a later one under 732, both raising the same issue, is an illogical use of judicial resources, and imposes an unnecessary burden on the officer.

 MTA faults Hayden for "fail[ing] to request or press for any timely intervention in the proceedings of the administrative [hearing] board" and for failing to obtain a hearing in circuit court prior to the conclusion of the hearing board proceedings. Although LEOBR does not contain a provision that the administrative proceeding must automatically be stayed pending resolution of the section 734 appeal, we agree with MTA that Hayden could have requested the circuit court to stay the administrative proceedings pending resolution of the section 734 appeal. Indeed, seeking a stay is a preferred

approach. The circuit court had equitable authority to grant a stay, in accordance with established principles and procedures governing judicial review of administrative decisions. *See* Md. Rule 7–205 ("[u]pon motion and after hearing, the court may grant a stay" of an "order or action of [an] administrative agency" pending judicial review authorized by statute).

We do not agree with MTA, however, that Hayden was required to seek a stay. MTA was on notice that the circuit court proceeding was pending, and indeed, indicated initially that it would await the outcome of that appeal. Hayden should not be penalized for the slower pace of the circuit court proceedings as compared to administrative hearings. We hold that when MTA elected to proceed in the face of the circuit court's order to show cause, it did so at the risk of the court vacating any administrative decision resulting from the challenged proceeding.

MTA insists that the circuit court "converted the prehearing remedial thrust of section 734 into the judicial review of a final agency action under section 732." Again, we disagree. The circuit court's reversal of the MTA hearing board's decision was not based on a review of the merits of the disciplinary decision. Rather, it vacated the administrative decision solely because the hearing board denied Hayden a specific procedural right protected by LEOBR, *i.e.*, the right to summon a witness. *See* Art. 27, section 730(j). The denial of this right tainted the results of the administrative hearing because it excluded witness testimony before the hearing board.

Finally, MTA calls upon the "long standing principle of exhaustion of administrative remedies prior to judicial review," arguing that in asking the circuit court to reverse the MTA hearing board's decision, Hayden attempts improperly to by-pass MTA administrative proceedings. The simple answer to this argument is that section 734 is, quite clearly, a statutory exception to the doctrine of exhaustion of administrative remedies.

To construe section 734 as MTA advocates would frustrate its purpose and effectively deny officers the "very special" procedural protection afforded them by the Legislature. *See Cochran,* 73 Md.App. at 613, 535 A.2d 955. Our conclusion is consistent with the nature of section 734 as a pre-hearing remedy designed to ensure a law enforcement officer a fair hearing. We believe this holding protects a law enforcement officer's rights under LEOBR, while not "restrict[ing] the agency's legitimate right to discipline errant officers." *Id.* at 616, 535 A.2d 955.

For these reasons, we affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**