*Manger v. Fraternal Order of Police Montgomery County*, No. 1021, September Term, 2017. Opinion by Nazarian, J.

**MUNICIPAL CORPORATIONS – LAW ENFORCEMENT OFFICER'S BILL OF RIGHTS – REVIEW IN GENERAL**

Under § 3-105 of the Maryland Code, Public Safety Article, the circuit court can act before a hearing to ensure that a police officer's heightened procedural protections under the Law Enforcement Officer's Bill of Rights are upheld when the hearing occurs. The circuit court's review power is limited to this specific function and is not an opportunity to decide the merits of the disciplinary charges leveled against the officer.

**MUNICIPAL CORPORATIONS – LAW ENFORCEMENT OFFICER'S BILL OF RIGHTS – POLYGRAPH TESTS**

Law enforcement agencies can order their officers to sit for polygraph tests as a part of internal departmental investigations. If an officer refuses, Maryland Code, Public Safety Article § 3-104(l)(2) authorizes the agency to discipline the officer. The agency is likewise authorized to discipline an officer for engaging in conduct designed to thwart the polygraph results despite not being explicitly stated in the statute.

**MUNICIPAL CORPORATIONS – LAW ENFORCEMENT OFFICER'S BILL OF RIGHTS – POLYGRAPH TESTS**

A reference in a charging document to the fact of a polygraph test does not violate *per se* an officer's rights under the Maryland Code, Public Safety Article § 3-104(m)(1), which prohibits the use of polygraph test results as evidence in an administrative hearing absent the officer's consent.

Circuit Court for Montgomery County
Case No. 430528-V

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1021

September Term, 2017

_____

J. THOMAS MANGER

v.

FRATERNAL ORDER OF POLICE,
MONTGOMERY COUNTY LODGE 35, INC.

_____

Wright,
Nazarian,
Arthur,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: November 5, 2018

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

The Law Enforcement Officer's Bill of Rights ("LEOBR")[1] provides procedural protections to police officers who are the subjects of internal departmental investigations or disciplinary proceedings. If an officer fears that his rights under the LEOBR may be violated, LEOBR § 3-105 authorizes him to apply to the circuit court for an order directing the agency to show cause why the right should not be granted. If the court finds that the agency violated the officer's rights, it can craft relief appropriate to the circumstances.

In this case, the officer sought, and got, relief beyond what the circumstances supported. Officer John Doe of the Montgomery County Police Department ("MCPD") was charged, among others, with Conduct Unbecoming An Officer after he allegedly engaged in "counter measures" designed to thwart an investigative polygraph test. He filed a petition for an order to show cause in the Circuit Court for Montgomery County, and argued that the Conduct Unbecoming charge violated his right not to consent to the admission of the results of a polygraph in his forthcoming administrative hearing. The court agreed, granted his petition, and struck the charge in its entirety. We see no threshold conflict between the Officer's rights under the LEOBR and the charge itself, however, and reverse.

## I.    BACKGROUND

Officer Doe[2] was investigated for soliciting sexual activity from a cashier in a retail

---

[1] Maryland Code (2003, 2011 Repl. Vol., Cum. Supp. 2018), §§ 3-101–3-113 of the Public Safety Article. All citations to statute in this opinion refer to the LEOBR.

[2] In response to an unopposed motion by Fraternal Order of Police (the "FOP"), the circuit court agreed to keep Officer Doe's identity confidential. It didn't escape our notice, though, that notwithstanding his efforts to protect his own privacy, Officer Doe revealed his alleged victim's first and last name in a public filing that didn't involve her at all or require the

establishment in October 2015. As part of the MCPD's investigation, Officer Doe was ordered to submit to a polygraph examination. There is no dispute that MCPD could order him to do so. During the test, Officer Doe is alleged to have engaged in "counter measures" designed to subvert it. His behavior persisted, even after a warning from the person administering the test. The record doesn't reflect the precise actions Officer Doe took to sabotage the polygraph, but we do know the results were rendered "unreadable and inconclusive."

At the conclusion of the investigation, MCPD Chief J. Thomas Manger issued a Notice of Charges against Officer Doe.[3] The first five charges related to the alleged solicitation and are not at issue here. Charge #6 alleged that the Officer committed conduct unbecoming an officer when he attempted to sabotage his polygraph test:

> CHARGE #6 -Rule 14- Conduct Unbecoming
>
> No employee will commit any act which constitutes conduct unbecoming an employee of the department. Conduct unbecoming includes, but is not limited to, any criminal, dishonest, or improper conduct.
>
> Specification: It is alleged that on June 22, 2016 [Officer Doe] intentionally used counter measures during [his] polygraph examination which rendered the polygraph unreadable and inconclusive. [He] continued to use counter measures after

---

court to know her identity. This outing didn't violate the letter of any Maryland Rules, but is inconsistent with his request for anonymous relief in this case.

[3] Chief Manger issued the Notice of Charges pursuant to LEOBR § 3-104(n)(1)(i), which provides:

> *Information provided on completion of investigation.* – (1) On completion of an investigation and at least 10 days before a hearing, the law enforcement officer under investigation shall be: (i) notified . . . of each charge and specification against the law enforcement officer; . . . .

being warned by the polygraph operator in an effort to sabotage the examination.

In response to the Notice of Charges, Officer Doe, through the FOP, filed a Petition for Show Cause Order under LEOBR § 3-105, which authorizes officers to seek relief in the circuit court prior to a disciplinary hearing when they believe their LEOBR protections have been violated. The FOP argued that Charge #6's reference to the "unreadable and inconclusive" polygraph test violated LEOBR § 3-104(m)(1), which prohibits the use of "the results of [a] polygraph examination . . . as evidence in an administrative hearing unless the law enforcement agency and the law enforcement officer agree to the admission of the results." Chief Manger responded *first* that the reference to the inconclusive result merely described the consequences of Officer Doe's counter-measures, not his truthfulness during the test, and *second*, that the results had not been used as evidence in an administrative hearing (since a hearing hadn't yet been held).

The circuit court agreed with the FOP and found that Charge #6's reference to the polygraph examination, and especially its reference to the test's "unreadable and inconclusive" outcome, violated Officer Doe's rights under LEOBR § 3-104(m)(1). Because polygraph examinations aren't admissible, the court said, proving interference with the exam itself necessarily would involve proof of the exam results:

> The Court of Appeals has decided that the results of polygraph examinations are not admissible. That [is] because they have determined as a matter of Frye-Reed that they are not sufficiently reliable. And that they are not generally accepted and that their reliability is such that in legal proceedings they should not be allowed. They have been ironclad in that determination and have repeatedly and regularly reversed

3

cases, civil, criminal, administrative, when the result issue was mentioned.

The department argues that the inconclusive determination is not a result. I respectfully disagree. Passing it is a result. Failing it is a result. And being unable to complete it because you tried to allegedly submarine it is also a result. But the Court of Appeals has said that the result, period, is inadmissible. Therefore, until if ever the Court of Appeals changes its mind you cannot charge somebody based on that.

The court granted the petition and entered an order striking Charge #6 in its entirety. The Chief appeals.

## II.       DISCUSSION

Officer Doe's petition asked the circuit court to do two things: *first*, to determine whether Charge #6 violated Officer Doe's rights under LEOBR § 3-104(m)(1), and, *second*, if it did, to craft an appropriate remedy under LEOBR § 3-105. Those are questions of statutory interpretation and application that we review *de novo*. *Schisler v. State*, 394 Md. 519, 535 (2006).

### A.       The LEOBR

The LEOBR provides law enforcement officers, such as Officer Doe, with "certain procedural guarantees . . . during an investigation or interrogation and any subsequent hearing that could lead to disciplinary action . . . ." *Bray v. Aberdeen Police Dep't*, 190 Md. App. 414, 424 (2010). An officer who has been charged is entitled to the LEOBR's extensive procedural rights and protections which far exceed those available to the general public because of the special "nature of the duties of police officers . . . ." *Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 122 (2002) (quoting *Cancelose v. City of Greenbelt*, 75 Md. App. 662, 666 (1988)). If an officer's LEOBR protections are violated

4

before the required disciplinary hearing under § 3-107(a),[4] § 3-105[5] authorizes the officer to petition the circuit court for relief:

> A law enforcement officer who is denied a right granted by this subtitle may apply to the circuit court of the county where the law enforcement officer is regularly employed for an order that directs the law enforcement agency to show cause why the right should not be granted.
>
> * * *
>
> The law enforcement officer may apply for the show cause order . . . at any time prior to the beginning of a hearing by the hearing board.
>
> * * *
>
> On a finding that the law enforcement agency obtained evidence against a law enforcement officer in violation of a right granted by this subtitle, the court shall grant appropriate relief.

The LEOBR also authorized the MCPD to order Officer Doe to take a polygraph exam. LEOBR § 3-104(l)(1). If the Officer had refused, the MCPD could have "commence[d] an action that may [have led] to a punitive measure as a result of the refusal." LEOBR § 3-104(l)(2). Even so, the *results* of a compelled polygraph aren't admissible or discoverable in a criminal proceeding against the officer, LEOBR § 3-104(l)(3), and "may not be used as evidence in an administrative hearing unless the law

---

[4] LEOBR § 3-107(a) provides in relevant part:

> (1) . . . if the investigation or interrogation of a law enforcement officer results in a recommendation of demotion . . . or similar action that is considered punitive, the law enforcement officer is entitled to a hearing on the issues by a hearing board before the law enforcement agency takes that action.

[5] LEOBR § 3-105 was derived without substantive change from the former Art. 27, § 734.

5

enforcement agency and the law enforcement officer agree to the admission of the *results*." LEOBR § 3-104(m)(1) (emphasis added).

## B. The Circuit Court Overstepped By Striking Charge #6.

Chief Manger contends that Officer Doe's rights under the LEOBR were not violated by the mere fact of Charge #6, and that because no administrative hearing had yet been held, there could not yet have been any violation of the Officer's right under LEOBR § 3-104(m)(1) to withhold his consent to its use as evidence.[6] Chief Manger's argument suggests, without quite saying so, that there was nothing for the circuit court to decide, and that the Officer should have waited until after the administrative hearing to raise his issues about the polygraph results. We don't doubt that the Officer could have waited, but he didn't have to: LEOBR § 3-105 specifically vests the circuit court with authority to address (and redress) LEOBR violations before the hearing board takes any action and, depending on the violation at issue, even before the hearing board has an opportunity to act.

The LEOBR gives police officers an "unusual right to appeal to a higher authority before the administrative hearing begins." *Mass Transit Admin. v. Hayden*, 141 Md. App. 100, 111 (2001). Consistent with its purpose to provide law enforcement officers with the

---

[6] The FOP argues that Chief Manger failed to preserve the MCPD's arguments about the court's authority to issue a show cause order before an administrative hearing was held or before the results were offered at a hearing. We disagree. The Chief asked the circuit court, in so many words, to dismiss the officer's show cause petition on the ground that the Conduct Unbecoming charge didn't violate the LEOBR. And he argued specifically, on multiple occasions, that the administrative board should decide in the first instance whether the Officer's countermeasures constituted a "result" of the polygraph exam. We see no meaningful difference between the substantive issues before the circuit court and the issues the Chief raises here.

right to pre-hearing review, § 3-105 specifies that "[t]he law enforcement officer may apply for the show cause order: . . . at any time ***prior to*** the beginning of a hearing by the hearing board." LEOBR § 3-105(b) (emphasis added). So the plain language of § 3-105 directed the Officer not to wait for the polygraph results to be offered (or admitted) in an administrative hearing. *Hayden*, 141 Md. App. at 112 ("[I]f an officer does not petition the circuit court for relief prior to the administrative hearing, he or she cannot use section [3-105] to challenge the administrative decision after the fact); *Moose v. Fraternal Order of Police*, 369 Md. 476, 485 (2002) ("Once the first . . . hearing commenced, [officers] were then barred from seeking a show cause order under section [3-105] . . ."). Section 3-105 is not a mechanism to "review what the trial board or police chief *has done* but to assure that the police agency *will do* what the law requires" in advance of the required administrative hearing. *Cochran v. Anderson*, 73 Md. App. 604, 613 (1988) (emphasis in original).

The Chief argues as well that "[t]he Administrative Hearing Board . . . is the proper forum to determine whether or not [the] charge is proper." That's true as far as it goes, but, again, doesn't preclude the Officer from seeking appropriate relief via § 3-105 before the board considers the merits of the charge. As a general matter, parties must exhaust administrative remedies before seeking relief from the circuit court. *See Moose,* 369 Md. at 492. But "[§ 3-105] is, quite clearly, a statutory exception to the doctrine of exhaustion of administrative remedies." *Hayden*, 141 Md. App. at 113. And it's a powerful and unusual exception—when else can a party seek an interlocutory, preemptive, *in limine* ruling from a *superior* tribunal before his rights are even violated?

Even so, the right to seek preemptive relief from the circuit court isn't boundless. The circuit court's authority under LEOBR § 3-105 is matter of statutory grace, and we interpret the operative language in the context of the overall scheme:

> When a statute is silent about an issue, we should consider its purpose in construing it to address that issue. We construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme. The statute should be construed so as to avoid an illogical or unreasonable result, or one which is inconsistent with common sense.

*Hayden*, 141 Md. App. at 110 (internal citations and quotations omitted).

The broad purpose of the LEOBR is to provide law enforcement officers with heightened procedural rights and protections when they are under internal investigation. *Id.* The narrower purpose of § 3-105 is to provide a forum for pre-hearing review that gives officers the benefit of having the courts oversee the administrative process in advance. *Id.* And the relief available under § 3-105 is a function of the alleged LEOBR violation at issue. "[T]he § 3-105 circuit court process entitles an officer to obtain a ruling from the circuit court that will be implemented at the hearing board trial . . . ." *Stone v. Cheverly Police Dep't*, 227 Md. App. 421, 438 (2016). "In most instances, injunctive or mandamus relief will suffice; the court can order the agency to act in conformance with the law and, if necessary, enforce its order through contempt or other appropriate proceedings." *Cochran*, 73 Md. App. at 614. In more extreme situations, the court may need to take more extreme steps. *See, e.g., Hayden* (§ 3-105 necessarily includes the authority to vacate an administrative decision that improperly denied an officer of his LEOBR rights when the administrative hearing takes place before a timely requested § 3-105 hearing); *Cochran*,

8

73 Md. App. at 612–614 (§ 3-105 grants the circuit court the authority to terminate LEOBR proceedings where the agency deliberately flouted its own prompt hearing requirement for fifteen months). But before intruding further into the administrative process, the circuit court "must also have some reasonable basis for concluding that less drastic relief—injunctive or mandamus-type relief—would be inadequate or inappropriate." *Id.* at 616. The goal is not to thwart appropriate investigations or discipline, but rather to empower the circuit court to take the steps necessary to "assure that the police agency *will do* what the law requires." *Id.* at 613.

In this case, the circuit court's ruling striking Charge #6 went beyond ensuring that the forthcoming administrative proceeding complied with the LEOBR. Officer Doe was not entitled under the LEOBR to interfere with his polygraph with impunity. Rather, the LEOBR required Officer Doe to sit for the polygraph but gave him the right to withhold his consent to its admission as evidence at his administrative hearing. That is the LEOBR right at issue, and the circuit court could have vindicated that particular right with less drastic measures, perhaps by ordering the administrative board not to admit the polygraph results.

The FOP argued, and the circuit court agreed, that *any* reference to the result of the polygraph test would be impermissible in a disciplinary hearing without the officer's consent, including the "result" that the test was inconclusive. We agree that the results themselves, at least embodied in the report resulting from the polygraph test, should be excluded by § 3-104(m)(1) absent Officer Doe's consent. We cannot agree, however, that the mere reference to an unreadable outcome in a charge necessarily is tantamount to

9

admitting polygraph results as evidence in an administrative hearing or that the charge cannot proceed to hearing without the polygraph result.

Charge #6 alleged that Officer Doe committed conduct unbecoming an officer when he actively interfered with the polygraph test. The charge does not turn on whether Officer Doe passed or failed his polygraph. It is aimed instead at Officer Doe's alleged attempt to thwart the internal investigation into his conduct as a law enforcement officer. It's the conduct itself, not the result of the conduct, that lies at the heart of the charge. To analogize to the criminal context, Charge #6 is akin to an added charge for obstructing justice during a criminal investigation. It doesn't matter for our purposes whether the Chief can prove the merits of the charge without the results of the polygraph—the issue is whether the exclusion of the polygraph results necessarily precludes the charge. And it doesn't, as a matter of law or logic.

Officer Doe's counsel conceded at oral argument that the logical conclusion from an affirmance in this case is that the LEOBR permits officers to thwart polygraphs with no consequences. Such a holding would send a message directly contrary to § 3-105's purpose "to enforce the accused officer's rights under the [LEOBR], not to restrict the agency's legitimate right to discipline errant officers." *Cochran*, 73 Md. at 616. More directly, since LEOBR § 3-104(1)(2) empowers the MCPD to charge officers for refusing to take an investigative polygraph, it makes no sense that Officer Doe couldn't be charged for refusal-by-sabotage.

We hold, therefore, that the court erred in concluding that the Chief would be unable to prove Officer Doe's misconduct without reference to the polygraph results and that,

therefore, Charge #6 must be stricken in its entirety. Until the Chief had the opportunity to put on evidence—such as, for example, the first-hand observations of the person administering the test—the viability of Charge #6 couldn't have been known. And although the court was entitled to consider measures to protect the Officer's rights under the LEOBR, its decision to strike the charge effectively allowed the Officer to leapfrog the administrative hearing board, the body properly empowered to decide the substance of Officer Doe's charges under LEOBR §§ 3-107–3-108.

Although we are reversing the circuit court's order, Officer Doe is not without remedies. The plain language of § 3-104(m)(1) precludes the Chief from offering the results of the investigative polygraph without the Officer's consent, and we have no trouble affirming that element of the court's decision. If the Chief can't make his case without the polygraph results, Officer Doe won't be punished (on that charge). And, of course, after the hearing, Officer Doe will have the full array of administrative remedies, and *then* the opportunity to seek judicial review of the hearing board's decision, first in the circuit court and then, if he is still dissatisfied, in the courts of appeal. LEOBR § 3-109. *See Coleman*, 369 Md. at 121–22. He was not, however, under the circumstance of this case, entitled to have Charge #6 stricken altogether by way of an order to show cause.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. APPELLEE TO PAY COSTS.**

11