800 A.2d 790

Charles A. MOOSE et al.,

v.

FRATERNAL ORDER OF POLICE, Montgomery County Lodge 35, Inc. et al.

No. 114, Sept. Term, 2001.

Court of Appeals of Maryland.

June 13, 2002.

Reconsideration Denied July 17, 2002.

Charles W. Thompson, Jr., County Atty. (Karen L. Federman Henry, Principal Counsel for Appeals, and Michael A. Fry, Asst. County Atty., on brief), Rockville, for appellants.

Martha L. Handman, Gaithersburg, for appellees.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

In this very convoluted case, we are going to dismiss, for reasons discussed *infra,* all of the judicial actions that have been filed. After the first emergency suspension hearing was held on April 26, 1999, appellees [1] could not obtain judicial review until they exhausted their administrative remedies. They have never filed any petition for review of administrative agency actions. Appellees, therefore, have failed to exhaust such remedies. The various lower courts in this case have overlooked the fact that appellees failed to exhaust their administrative remedies and, therefore, this case and its prior proceedings, were never properly before any court. The lower courts should not have exercised jurisdiction in this case to rule on any of the proceedings in any of the cases other than to dismiss them.

We are going to discuss the complete history of the case, although the proceedings after the original emergency suspension hearing are not relevant to our holding in the case at bar. After the original emergency suspension hearing concluded, the courts, under the circumstances of this case, should not have exercised jurisdiction to consider any issues raised from that point until the present.

### Facts

In April of 1999, Officer John Doe [2] was suspended with pay from the Montgomery County Police Department (Police Department) pending an investigation into allegations that the

---

1. Appellees in the case at bar are Officer John Doe and the Fraternal Order of Police, Montgomery County Lodge 35, Inc.

2. The police officer was referred to as John Doe before the Circuit Court for Montgomery County.

officer had used excessive force in the performance of his duties.[3] Officer Doe was assigned to administrative duties pending the outcome of the investigation, and his power to make arrests was suspended. Officer Doe was notified that pursuant to section 734A(2)(iii), he would be provided a prompt hearing before a one-member hearing board.[4] Prior to that hearing, Officer Doe did not seek a show cause order from the trial court in respect to the one-member composition of the hearing board.

On April 26, 1999, an emergency suspension hearing was held before a one-member hearing board and after the hearing the chief continued Officer Doe's suspension. On June 29, 1999, the Fraternal Order of Police, Montgomery County Lodge 35, Inc. and Officer Doe, appellees, filed a "Verified Petition in Support of Show Cause Order and/or Complaint for Declaratory Relief" in the Circuit Court for Montgomery County purporting to be pursuant to Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 734 of the LEOBR[5] and

---

3. Officer Doe was suspended pursuant to Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 734A(2)(i), which is part of the Law Enforcement Officers' Bill of Rights (LEOBR). Section 734A(2)(i) now states:

   " **§ 734A. Summary punishment or emergency suspension.**

   . . .

   (2) (i) Emergency suspension with pay may be imposed by the chief when it appears that the action is in the best interest of the public and the law enforcement agency."

   The LEOBR is codified at Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27, section 727 *et seq.*

4. It had been the practice of the Police Department to have emergency suspension hearings before a three-member hearing board. At the end of 1998, the Police Department changed its policy and started holding the emergency suspension hearings before a one-member hearing board. Regardless of the number of members serving on the emergency suspension with pay hearing board, Officer Doe would have still been entitled to a subsequent hearing on the merits before a three-member hearing board pursuant to the LEOBR. The emergency suspension hearing was held strictly to review the reasonableness of the chief's actions in transferring Officer Doe to administrative duties prior to a resolution on the merits.

5. All references to section 734 are to this section.

Maryland Code (1973, 1998 Repl.Vol.), section 3–401 *et seq.* of the Courts and Judicial Proceedings Article.[6]   In their petition against the Chief of Police, Charles Moose, and the Police Department,[7] appellees challenged the Police Department's failure to convene a three-member hearing board for the emergency suspension hearing and also challenged the conduct of the hearing.   Because the parties had not exhausted their administrative remedies, the Circuit Court should have dismissed the action.   Instead, it found that the administrative hearing had been unfair and did not address the other issue.[8]  A new emergency suspension hearing was scheduled, with the hearing board to consist of only one member.

On February 9, 2000, prior to the scheduled second emergency suspension hearing, appellees again filed a "Verified Petition in Support of Show Cause Order and/or Complaint for Declaratory Relief" in the Circuit Court for Montgomery County pursuant to section 734 and section 3–401 *et seq.*   In their petition, appellees sought to have the Circuit Court issue an order stating that appellants had to conduct the emergency suspension hearing on the reasonableness of Officer Doe's emergency suspension before a three-member hearing board. Again, the Circuit Court should, for the reasons we have mentioned and shall explain further, have dismissed the action.   The Circuit Court, however, determined that the LEOBR did not require appellants to use a three-member hearing board.   Appellees appealed to the Court of Special Appeals, which should have vacated the judgment and directed the trial court to dismiss the action.   Instead, it remanded the case to the Circuit Court for a determination of all of the issues in this case.   The Court of Special Appeals held that the Circuit Court had only addressed whether Officer Doe

---

**6.**   All references to section 3–401 are to this section.

**7.**   These two parties are appellants in the case at bar.

**8.**   At this point in the proceedings, the Circuit Court should not have exercised jurisdiction to decide any of the issues presented by appellees. The Circuit Court should have dismissed the case.

would have been entitled to a three-member emergency suspension hearing board pursuant to the LEOBR. The Circuit Court, according to the Court of Special Appeals, failed to address whether Officer Doe would have been entitled to a three-member emergency suspension hearing board pursuant to the Police Department's regulations. The Court of Special Appeals thus held that it could not reach the merits of the dispute because the Circuit Court had failed in a declaratory judgment action to issue a written order fully addressing the rights of the parties. The Court of Special Appeals apparently did not perceive that appellants had not exhausted their administrative remedies.

On remand, the Circuit Court determined that both the LEOBR and the Police Department's administrative regulations required a three-member emergency hearing board. The Circuit Court, however, should have dismissed the action even though the Court of Special Appeals had remanded. Appellants filed an appeal to the Court of Special Appeals. We granted certiorari on our own motion prior to further consideration by that court. Appellants present two questions for our review:

"I.    Under the Law Enforcement Officers' Bill of Rights, does the requirement for a 'prompt hearing' mean that the charges against the officer must be disposed of promptly, or does the provision require an additional hearing before a three-member board to address the sole issue of the reasonableness of the suspension prior to addressing the charges?

II.    Do the administrative procedures of the Montgomery County Police Department require a three-person hearing board to review the police chief's decision to suspend an officer's police powers with pay?"

We do not address either of appellants' questions. We are going to vacate the decision of the Circuit Court and remand the case to that court with instructions to dismiss all *judicial* proceedings now, or heretofore, pending, arising out of the two petitions for show cause and declaratory judgment actions.

We hold that in the case *sub judice*, appellees failed to exhaust their administrative remedies as is required before the commencement of either of the declaratory judgment actions. Because the parties had not exhausted all administrative remedies, neither the Circuit Court, nor the Court of Special Appeals, should have addressed any issues in the framework of declaratory judgment actions. The declaratory judgment actions should have been dismissed.

We also hold that the show cause provisions of section 734 were not applicable to the case at bar in respect to the only emergency suspension hearing properly held because the emergency suspension hearing had already been held when appellees first filed for relief under that section. Once the first emergency suspension hearing was held, the show cause provision of section 734 of the LEOBR was not available to appellees.

### Discussion

In this very unusual procedural case, Officer Doe was initially subjected to an "emergency suspension hearing." At no time prior to that initial emergency suspension hearing did appellees request a show cause order challenging the one-member composition of the emergency suspension hearing board. The applicable statute, section 734, permitting show cause orders in such cases, requires them to be filed prior to the commencement of such hearings. That was not done prior to the initial emergency suspension hearing.

Shortly after the conclusion and decision in the initial emergency suspension hearing, appellees filed a combined action in the Circuit Court for Montgomery County. One thrust of their action was an effort to require appellants to "show cause," pursuant to section 734,. as to why a three-member emergency suspension hearing board was not required. As we have indicated, and will discuss *infra*, such a show cause petition must be filed prior to the "commencement" of such a hearing. Accordingly, this type of action was not then available to appellees and should not have been considered by any of the lower courts. Another thrust of

appellees' efforts was for a declaratory judgment that a three-member emergency suspension hearing board was required. At the time of appellees initial filing of an action in the Circuit Court, there had not been, and, in fact, as far as the record reflects, has never been to this point, a subsequent hearing on the merits. Therefore, administrative remedies had not at that time, and never have, been exhausted. A declaratory judgment action was, therefore, not permitted at that time, or since, or now, as we explain, *infra.*

The trial court to which the issues were presented should have dismissed the action. What then should have occurred was for a hearing on the merits before a three-member hearing board pursuant to the LEOBR and any subsequent reviews as statutorily appropriate. Instead, the Circuit Court for Montgomery County directed certain actions, which it should not have directed. It should not have authorized any reconvened or additional emergency suspension hearing because the administrative remedies had not been exhausted.

Thereafter, prior to the new emergency suspension hearing improperly directed by the Circuit Court, appellees filed a show cause and declaratory judgment action in the Circuit Court reasserting their claims. That is the instant action. These issues, however, were not properly before the Circuit Court because it could not properly direct or permit another emergency suspension hearing. Officer Doe had already had the only emergency suspension hearing to which he was at that point entitled. He had not asked for court intervention prior to that hearing. At that point, the issue of the validity of a one-member board had to await the resolution of the merits hearing before a three-member board, *i.e.,* had to await the exhaustion of administrative remedies. For the same reason, these issues are not properly before us. There has, even now, been no exhaustion of administrative remedies. After the original emergency suspension hearing, the only action left was for appellees and appellants to hold a hearing on the merits pursuant to the LEOBR. Once all administrative remedies had been exhausted, appellees could then have

sought judicial review in the Circuit Court for Montgomery County.

After the initial emergency suspension hearing, the Circuit Court should have dismissed appellees' petition and then a hearing on the merits pursuant to the LEOBR could have been held if necessary. Because administrative remedies had not been exhausted, the Circuit Court should not have ruled on appellees' petition. Therefore, any hearings, other than a hearing on the merits, and any further judicial review was inappropriate. At that point, the only action left was for a hearing on the merits pursuant to the LEOBR. All of the lower courts should have dismissed all of the actions.[9]

## Section 734

Appellees' first contention in their "Verified Petition in Support of Show Cause Order and/or Complaint for Declaratory Relief" is that pursuant to section 734 Officer Doe was being denied a right under the LEOBR—his alleged right to a three-member emergency suspension hearing board. We hold that appellees were barred from applying for show cause relief under section 734, seeking the implementation of a three-member emergency suspension hearing board, after that first emergency suspension hearing had been held.

A party being denied a right under the LEOBR can apply for a show cause order under section 734. Section 734 states:

" § 734.   **Application to court for show cause order.**

Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time *prior to the commencement of the hearing before the hearing board,* either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the

---

9.   If there has since been an exhaustion of administrative remedies, we are unaware of it.  But, if so, and there is some action pending seeking review of the original agency action that was timely filed, it may be alive.  We know of none.

law enforcement agency to show cause why the right should not be afforded." [Emphasis added.]

As section 734 clearly states, appellees would have had to have applied for a show cause order before the first emergency suspension hearing seeking to require the Police Department to show cause why appellees' alleged right to a three-member hearing board was not being provided at the emergency suspension hearing. Appellees were aware that the Police Department was planning on the hearing board only consisting of one member at the first emergency suspension hearing. In the memorandum sent to Officer Doe to inform him of his police powers being suspended, the Police Department stated that the board would only consist of one member. At that time, appellees did not apply to the circuit court for a show cause order pursuant to section 734. Officer Doe proceeded with the emergency suspension hearing and then, before a merits hearing before a three-member board could be held, filed an action in the Circuit Court for Montgomery County protesting the Police Department's failure to have a three-member emergency suspension hearing board. Once the first emergency suspension hearing commenced, appellees were then barred from seeking a show cause order under section 734 as to the already held emergency suspension hearing.

## Declaratory Judgment

Appellees' second contention in their "Verified Petition in Support of Show Cause Order and/or Complaint for Declaratory Relief" is that they are entitled to declaratory relief stating that the emergency suspension hearing boards should consist of three members. After the first emergency suspension hearing, no subsequent hearing on the merits before a three-member board that would exhaust appellees' administrative remedies was held prior to the instant declaratory judgment action. We hold that the Circuit Court should not have addressed appellees' concerns in either of the declaratory judgment actions because appellees had not, and still have not, exhausted their administrative remedies.

Appellees filed for relief under the declaratory judgment statutes, codified at Maryland Code (1973, 1998 Repl.Vol.),

section 3–401 *et seq.* of the Courts and Judicial Proceedings Article. The courts of this state, however, have, in cases involving administrative agency actions, held that, generally, all administrative remedies must be exhausted before a party may seek a declaratory judgment in the Circuit Court. We examined the application of the declaratory judgment statutes to administrative proceedings in *Secretary, Department of Human Resources v. Wilson,* 286 Md. 639, 409 A.2d 713 (1979), when we stated:

> "Ordinarily, where a statutory administrative remedy is provided, it will be deemed to be exclusive.[10] *White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260, 265 (1978); *Schneider v. Pullen,* 198 Md. 64, 68, 81 A.2d 226, 228 (1951). More particularly, the Uniform Declaratory Judgment Act, Md.Code (1974) § 3–409(b) of the Courts and Judicial Proceedings Article expressly provides:
>
>> 'If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.'

---

**10.** This sentence was explained further in *Zappone v. Liberty Life Insurance Co.,* 349 Md. 45, 706 A.2d 1060 (1998), when we stated:

> "But cf. Sec. Dep't of Human Res. v. Wilson, 286 Md. 639, 643–644, 409 A.2d 713, 716 (1979), where the Court incorrectly stated: 'Ordinarily, where a statutory administrative remedy is provided, it will be deemed exclusive.' Actually, the statutory administrative and judicial review remedy involved in *Wilson* was properly held to be exclusive, although not because of the above-quoted statement. It was exclusive because the statutory scheme authorizing the administrative and judicial review remedy created the cause of action involved, and there existed no recognized alternative action for the plaintiffs' claims. *See also White v. Prince George's Co[unty ],* 282 Md. 641, 649, 387 A.2d 260, 265 (1978), involving a similar situation. In addition, sometimes opinions in this area seem to use the word 'exclusive' when the court actually means 'primary.' "

*Id.* at 63, n. 7, 706 A.2d at 1069, n. 7. We note, however, that we have held that the LEOBR is the exclusive remedy for officers in disciplinary proceedings. *See Moats v. City of Hagerstown,* 324 Md. 519, 527, 597 A.2d 972, 976 (1991) ("Furthermore, subsequent history demonstrates continued adherence to the position that the procedures of the Law Enforcement Officers' Bill of Rights would be the exclusive remedy for law enforcement officers faced with disciplinary charges.").

This Court has consistently held that because, under the Declaratory Judgment Act, statutory administrative remedies are exclusive, the administrative procedures established must be exhausted before a litigant may seek declaratory relief from a trial court. *Soley v. State Comm'n on Human Relations,* 277 Md. 521, 526–27, 356 A.2d 254, 257 (1976); *Tawes v. Williams,* 179 Md. 224, 228, 17 A.2d 137, 139 (1941).

In *Soley,* 277 Md. at 526, 356 A.2d at 257, this Court articulated the underlying rationale for this requirement. There, Judge Levine said for the Court:

'The rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed.'

Thus, this Court recognized that when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme. For the same reasons, an appellate court, on its own motion, ordinarily will raise the issue of exhaustion of statutory administrative remedies, even though not raised by the parties. *Maryland–Nat'l Capital Park & Planning Comm'n v. Washington Nat'l*

*Arena,* 282 Md. 588, 594, 386 A.2d 1216, 1222 (1978); *Commission on Medical Discipline v. Bendler,* 280 Md. 326, 327, 329–30, 373 A.2d 1232, 1232–34 (1977). *See* also *Eastgate Assocs. v. Apper,* 276 Md. 698, 701, 350 A.2d 661, 663 (1976); *Harford Sands, Inc. v. Levitt & Sons, Inc.,* 27 Md.App. 702, 706, 343 A.2d 544, 546 (1975). Indeed, because the parties cannot, by agreement, cause an appellate court to act contrary to public policy, such a court will consider this question even though all of the parties desire judicial intervention. *See Eastgate Assocs. v. Apper,* 276 Md. at 700, 350 A.2d at 663; *Price v. Hobbs,* 47 Md. 359, 378 (1877); *Harford Sands, Inc. v. Levitt & Sons, Inc.,* 27 Md.App. at 706, 343 A.2d at 546. Accordingly, we have, on our own motion, raised the issue of exhaustion of statutory remedies here."

*Id.* at 643–45, 409 A.2d at 716–17; *see Josephson v. City of Annapolis,* 353 Md. 667, 674–78, 728 A.2d 690, 693–95 (1998); *Prince George's County v. Blumberg,* 288 Md. 275, 283–85, 418 A.2d 1155, 1160–61 (1980); *Abington Center Assocs. Ltd. Partn. v. Baltimore County,* 115 Md.App. 580, 590–93, 694 A.2d 165, 170–72 (1997).

■ While the issue of whether appellees properly filed for a declaratory judgment was not raised by either party, we have the authority to raise the issue sua sponte. *Secretary, Department of Human Resources v. Wilson,* 286 Md. 639, 645, 409 A.2d 713, 717 (1979) ("[A]n appellate court, on its own motion, ordinarily will raise the issue of exhaustion of statutory administrative remedies, even though not raised by the parties.") Furthermore, even though both parties in the case *sub judice* want this Court to decide whether an emergency suspension hearing board has to consist of three members, we decline to do so. As stated in *Secretary, Department of Human Resources v. Wilson, supra,* 286 Md. at 645, 409 A.2d at 717: "Indeed, because the parties cannot, by agreement, cause an appellate court to act contrary to public policy, such a court will consider this question [exhaustion of remedies] even though all of the parties desire judicial intervention. Accordingly, we have, on our own motion, raised the issue of exhaus-

tion of statutory remedies here." (Citations omitted.) There are a few limited exceptions to the requirement that administrative remedies be exhausted; [11] the case at bar does not fall within any of the exceptions.

The administrative remedy available to Officer Doe in the case at bar is enunciated in the LEOBR [12] and the administrative procedures of the Police Department, specifically Function Code 301.C–Administrative and Suspension Hearing Boards.[13] Officer Doe was suspended pursuant to section

---

11. One of the exceptions to the general rule was created by section 734. However, it is conditioned on the filing of a petition requesting show cause relief before the commencement of the emergency suspension hearing. Once that hearing commences, the exception is no longer available.

12. Section 735 of the LEOBR, as enacted by 1975 Maryland Laws Chapter 809, did not distinguish between emergency suspensions with pay or without pay. Section 735(A)(2) stated:
"(2) Emergency suspension may be imposed by the chief when it appears that the action is in the best interest of the public and the law-enforcement agency. Any person so suspended shall be entitled to a prompt hearing."
This section moved to section 734A and was amended by 1987 Maryland Laws Chapters 777 and 778 to include emergency suspensions with pay. The new section 734A stated, in relevant part:
"(2) (i) Emergency suspension with pay may be imposed by the chief when it appears that the action is in the best interest of the public and the law-enforcement agency.
(ii) If the officer is suspended with pay, the chief may suspend the police powers of the officer and reassign the officer to restricted duties pending a determination by a court of competent jurisdiction with respect to any criminal violation or final determination by an administrative hearing board as to any departmental violation.
(iii) Any person so suspended shall be entitled to a prompt hearing.
(3) (i) Emergency suspension of police powers without pay may be imposed by the chief if a law enforcement officer has been charged with the commission of a felony.
(ii) Any person so suspended shall be entitled to a prompt hearing."
Because the declaratory judgment action is improper in the first instance, we do not need to determine the meaning of the Police Department's administrative regulations, *infra* note 13, the LEOBR, or the intent of the General Assembly in changing the LEOBR to make a distinction between emergency suspensions with pay or without pay.

13. Function Code 301.C provides, in relevant part:
"**II. Definitions**

734A(2)(i), which allows for an emergency suspension with pay if "it appears that the action is in the best interest of the

. . .

   C. *Traditional Administrative Hearing Board–The Board will consist of three members. All members of the board are selected by the Chief of Police, with one member being of equal rank as that of the accused. The chairperson will be an executive officer appointed by the Chief of Police.*

   D. *Alternative Administrative Hearing Board–The Board will consist of three members. The Chief of Police will appoint one member, as will the FOP. The third member, who will function as the chairperson, will be selected from a previously agreed upon panel of arbitrators. The Alternative Hearing Board process is not available in hearings stemming from summary punishment cases.*

. . .

**IV. Emergency Suspension Hearing Boards**

   A. Once an employee is placed on administrative leave and the Chief of Police is notified of the incident by the employee's Unit Commander, the Chief, or designee, shall determine if an emergency suspension is warranted. *'Emergency suspension with pay may be imposed by the chief when it appears that the action is in the best interest of the public and the law enforcement agency. . . . Any person so suspended shall be entitled to a prompt hearing.'* Article 27, Section 734 A(2). If the Chief, or designee, imposes suspension, they shall notify the employee promptly in writing of that decision and inform the employee that they are entitled to a prompt hearing. The Chief will ensure that a hearing is scheduled as soon as possible and that the employee is notified in writing of the date and time of that hearing.

*An officer may waive in writing any or all rights provided in Sections 727 through 734 [of Article 27] of the Annotated Code of Maryland.*

   B. Suspension Hearing Board

    1. The purpose of the suspension hearing is to determine whether the suspension of an officer by the Chief of Police, or designee, is reasonable under the circumstances. The procedures for the suspension hearing will follow that of the Administrative Hearing Board. . . .

    2. The Format to be followed can be found in Appendix D."

Appendix D of Function Code 301.C states, in relevant part:

**"APPENDIX D**

<u>SUSPENSION HEARING BOARD PROCEDURE</u>

(RECORDING SYSTEM ACTIVATED)

This Suspension Hearing Board is hereby convened and called to order. For the purpose of identification on the recording system, will the following parties identify themselves when called upon to do so;

   A. I am _____, Chairman of the Suspension Hearing Board.

   B. Will the next highest ranking officer serving as a Suspension Hearing Board member identify himself?

   C. Will the officer of equal rank serving as a Suspension Hearing Board member identify himself?" [Emphasis in original.]

public and the law enforcement agency." Once Officer Doe received an emergency suspension, he was entitled to a prompt hearing under section 734A(2)(iii). Pursuant to Function Code 301.C, the prompt hearing after the emergency suspension is for a hearing board to determine if the suspension, as an emergency suspension, was reasonable under the circumstances. The issue that the parties in the case *sub judice* would like resolved is whether the emergency suspension hearing board is required to have three members.

Under the circumstances here present, the LEOBR provided Officer Doe with two different opportunities to obtain relief from administrative determinations. Prior to the commencement of the emergency suspension hearing, appellees could seek relief pursuant to section 734, which provides:

"Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board . . . to the circuit court . . . for any order directing the law enforcement agency to show cause why the right should not be afforded."

After the emergency suspension hearing and a subsequent three-member board hearing on the merits, and upon the completion of the hearing board's decision pursuant to section 731, section 732 [14] states:

" § 732.  **Appeals.**

Appeal from decisions rendered in accordance with § 731 shall be taken to the circuit court for the county pursuant to Maryland Rule 7–202. Any party aggrieved by a decision of a court under this subtitle may appeal to the Court of Special Appeals." [15]

---

**14.** Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 732. All references to section 732 are to this section.

**15.** We note that both the LEOBR and Function Code 301.C provide for judicial review *after a decision on the merits by a hearing board.* In other words, after an officer has exhausted his administrative remedies.

Therefore, an officer involved in an investigation and hearing first has an opportunity prior to the commencement of a hearing to apply for a show cause order as to why the officer is being denied a right and, then, upon the final decision on the merits of the three-member hearing board under the LEOBR and Function Code 301.C,[16] has an opportunity to seek judicial review in the Circuit Court. The statutes provided appellees with an opportunity to redress any problems both prior to the commencement of the emergency suspension hearing and at the completion of the administrative process, after a final decision on the merits.

We have held that, generally, a court may not provide a statutory or administrative regulation interpretation through an action for declaratory judgment until all administrative remedies have been exhausted. In *Maryland Commission on Human Relations v. Mass Transit Administration,* 294 Md. 225, 449 A.2d 385 (1982), we were examining whether administrative remedies had to be exhausted in cases where a declaratory judgment seeking a statutory interpretation had been filed. The Mass Transit Administration (MTA) denied the applications of three women seeking to be bus drivers, because MTA's physician determined that the three women were overweight. The three women filed complaints with the Maryland Commission on Human Relations (Commission), alleging that MTA had unlawfully discriminated against them. After an investigation of the complaints by the Commission, it was determined that MTA had engaged in discrimination based on physical handicaps in violation of Maryland Code (1957, 1979 Repl.Vol.), Article 49B, section 16(a)(1). MTA would not concur with the Commission's findings, so the Commission had the matter set for a hearing.

Before the hearing was held, MTA filed a bill for declaratory and injunctive relief against the Commission in the Circuit Court for Baltimore City. MTA asserted that obesity was not a physical handicap and that the Commission did not have the authority to consider obesity as a physical handicap. MTA

---

**16.** Function Code 301.C adopted the language of section 732.

requested that the Circuit Court grant a declaratory judgment determining whether obesity is a physical handicap under Article 49B, section 16. The Commission filed an answer asking for the bill for declaratory and injunctive relief to be dismissed because MTA had failed to. exhaust its administrative remedies. The Circuit Court held that MTA did not have to exhaust its administrative remedies because a question of statutory interpretation was involved. The Circuit Court entered a declaratory judgment stating that the Commission could not find that obesity was a physical handicap unless the Commission could demonstrate that the obesity was caused by bodily injury, birth defect, or illness. The Commission appealed to the Court of Special Appeals and MTA filed a cross-appeal. We granted certiorari on our own motion prior to the case being heard in the Court of Special Appeals.

We held that MTA had failed to exhaust its administrative remedies and we cited the general rule that "statutorily prescribed administrative and judicial review remedies must ordinarily be pursued and exhausted." *Id.* at 230, 449 A.2d at 387. We then examined whether MTA was required to exhaust its administrative remedies prior to a statutory interpretation. Judge Eldridge, writing for the Court, stated:

"Although there may be cases in some other jurisdictions supporting the trial court's view that administrative remedies need not be exhausted if the question is one of statutory interpretation like that presented here, this view is contrary to the settled law of Maryland. This Court has consistently held that statutorily prescribed administrative and judicial review remedies must be exhausted in cases involving the interpretation of statutory language. *See, e.g., Prince George's Co[unty ] v. Blumberg, supra,* 288 Md. at 287–290, [418 A.2d 1155] (interpretation of county building code); *Sec., Dep't of Human Res. v. Wilson, supra,* 286 Md. at 642, 647, [409 A.2d 713] (interpretation of statutory provision increasing the amount of unemployment benefits); *Soley v. St. Comm'n On Human Rel., supra,* 277 Md. at 523–524, 527–528, [356 A.2d 254] (interpretation of provision in Art. 49B setting forth requirements for complaints issued

by Human Relations Commission). Moreover, to hold that the existence of a statutory interpretation issue furnishes an excuse to abort the administrative proceedings before a final agency decision, would also be inconsistent with the principle that the agency's construction of a statute which it administers is entitled to weight. *See National Asphalt v. Prince Geo[rge ]'s Co[unty ], supra,* 292 Md. at 80, 437 A.2d 651; *Balto. Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 14–15, 427 A.2d 979 (1981); *Comptroller v. John C. Louis Co.,* 285 Md. 527, 543, 404 A.2d 1045 (1979); *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 685, 393 A.2d 181 (1978); *Demory Brothers v. Bd. of Pub. Works,* 273 Md. 320, 327, 329 A.2d 674 (1974); *Department v. Greyhound,* 247 Md. 662, 669, 234 A.2d 255 (1967)."

*Id.* at 232–33, 449 A.2d at 389 (footnote omitted); *see Maryland Comm'n on Human Relations v. Bethlehem Steel Corp.,* 295 Md. 586, 592–96, 457 A.2d 1146, 1149–51 (1983).

■ In the case at bar, appellees filed for a declaratory judgment to have the Circuit Court interpret whether the LEOBR and Function Code 301.C require an emergency suspension hearing board to consist of three members.[17] Generally, appellees would be required to exhaust their administrative remedies prior to obtaining a statutory interpretation by a declaratory judgment. We cannot find a reason or exception that would allow appellees to be excused from the holdings of this Court that require a party to exhaust its administrative remedies prior to obtaining a judicial interpretation of a statute applied by an administrative agency.

## Conclusion

Generally, in a matter involving administrative agency action, a party cannot pursue a declaratory judgment in the circuit court until it has exhausted all available administrative remedies. More specifically, normally a party cannot obtain a

---

17. As indicated, there is no issue before us concerning the LEOBR requirement that the board that finally determines the matter on its merits be composed of three members.

statutory interpretation involving the application of a statute by the appropriate administrative agency until all administrative remedies have been exhausted. Appellees failed to exhaust their administrative remedies prior to seeking a statutory interpretation through a declaratory judgment action. While both parties in this case would like for us to address whether an emergency suspension hearing requires a three-member hearing board, we cannot address the issue because this case is not properly before us.[18] Additionally, we hold that once the first emergency suspension hearing was held, appellees were barred from applying for a section 734 show cause order. Appellees failed to exhaust their administrative remedies, therefore, the Circuit Court should have dismissed appellees' petition. All other actions filed and proceedings held after the initial emergency suspension hearing, other than a hearing on the merits pursuant to the LEOBR, should have been dismissed by all of the lower courts. The case should never have been before any of the courts, including this Court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE CASE; COSTS TO BE PAID 50% BY APPELLANTS AND 50% BY APPELLEES.**

Judge RAKER concurs in the judgment only.

---

**18.** It has never been properly before any court.