REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2526

SEPTEMBER TERM, 2014

EARL STONE ET AL.

v.

CHEVERLY POLICE DEPARTMENT ET AL.

Eyler, Deborah S.,
Wright,
Friedman,

JJ.

Opinion by Eyler, Deborah S., J.

Filed: March 31, 2016

The Cheverly Police Department ("CPD") and Police Chief Harold "Buddy" Robshaw (collectively "the Town"),[1] the appellee, brought disciplinary charges against Corporal Earl Stone and Corporal Edmund Gizinski,[2] the appellants, pursuant to the Law Enforcement Officers' Bill of Rights ("the LEOBR"), Md. Code (2003, 2011 Repl. Vol., 2015 Supp.), section 3-101 through 3-113 of the Public Safety Article ("PS").[3] The Officers elected to be tried by a hearing board. Before the trial commenced, they filed suit in the Circuit Court for Prince George's County, pursuant to section 3-105, seeking an order directing the Town to show cause why the charges should not be dismissed. They also asked the court to enjoin the Town from moving forward with the disciplinary charges until the court had ruled.

The court held a hearing and entered an order denying the request for a show cause order and to dismiss the charges, and also denying the request for injunctive relief. The Officers filed a notice of appeal from that order. Soon thereafter, the hearing board trial went forward. The Officers declined to participate. The hearing board found them guilty on all charges. Ultimately, they were terminated from employment as a sanction. Not having participated in the hearing board trial, the officers did not bring an action for judicial review.

---

[1] As the appellee points out in its brief, the proper respondent in this case is the "Mayor and Town Council of Cheverly." *See* Cheverly Charter, § C-1.

[2] We shall refer to Stone and Gizinski collectively as "the Officers" except when it is necessary to distinguish between them.

[3] Unless otherwise indicated, all statutory references are to the PS Article.

The Officers pose two questions for review, which we have rephrased:

I. Did the circuit court err by denying their request for a show cause order and to dismiss the charges against them, when the charges were based on evidence the CPD obtained, in violation of their Fourth Amendment rights?

II. Did the circuit court err by not dismissing the charges against the Officers as being brought in unlawful retaliation for their testimony in favor of a fellow officer?

We shall dismiss the appeal for failure to exhaust administrative remedies.

## The LEOBR

The purpose of the LEOBR is to "guarantee that certain procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal." *Blondell v. Baltimore City Police Dep't*, 341 Md. 680, 691 (1996) (quoting *Abbot v. Administrative Hearing Bd.*, 33 Md. App. 681, 682 (1976)).

When an investigation or interrogation of a law enforcement officer regarding alleged misconduct "results in a recommendation of demotion, dismissal, [or any other punitive measure], the law enforcement officer is entitled to a hearing on the issues by a hearing board before the law enforcement agency takes that action." § 3-107(a). Ordinarily, the hearing board shall be composed of no less than three law enforcement officers chosen by the chief of police, at least one of whom holds the same rank as the officer charged. § 3-107(c). The chief of police and the hearing board are authorized to issue subpoenas to compel the attendance of witnesses and the production of relevant documents and other evidence. § 3-107(d)(1). The officer also may request the issuance of subpoenas. § 3-107(d)(3).

2

At the trial before the hearing board, the law enforcement agency and the officer both shall be given "ample opportunity to present evidence and argument about the issues involved" and shall be permitted to cross-examine witnesses called by the other party. § 3-107(e)(2) & (4). Evidence is admissible if it has "probative value that is commonly accepted by reasonable and prudent individuals in the conduct of their affairs," and is not "incompetent, irrelevant, immaterial, [or] unduly repetitious." § 3-107(f)(1) & (2).

The hearing board's decision "shall be in writing and accompanied by findings of fact." § 3-108(a)(1). If it finds the officer "not guilty," the disciplinary action ends. § 3-108(a)(3). If it makes a finding of guilt, it must reconvene to receive additional evidence, consider the law enforcement officer's past job performance, and make a recommendation to the chief of police about the appropriate sanction to impose. § 3-108(a)(4). Within thirty days of the hearing board's recommendation about a sanction, the chief of police shall issue a final disciplinary order. § 3-108(d).[4] An officer aggrieved by a final disciplinary order may challenge it in the circuit court, in an action for judicial review. § 3-109(a).

Section 3-103 is entitled "Rights of law enforcement officers generally." One such right, as set forth in subsection (d), is as follows:

> *Retaliation*. – A law enforcement officer may not be discharged, disciplined, demoted, or denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to the law enforcement officer's

---

[4] Under certain circumstances not relevant here, the decision of the hearing board is final and binding. PS § 3-108(c).

employment or be threatened with that treatment because the law enforcement officer:

> (1) has exercised or demanded the rights granted by this subtitle; or
> (2) has lawfully exercised constitutional rights.

Finally, as relevant here, section 3-105, "Application for show cause order," allows a law enforcement officer, in certain limited circumstances, to seek judicial intervention other than in a post-decision action for judicial review. Specifically, an officer "who is denied a right granted by [the LEOBR] may apply to the circuit court . . . for an order that directs the law enforcement agency to show cause why the right should not be granted." § 3-105(a). The officer only may do so "prior to the beginning of a hearing by the hearing board." § 3-105(b); s*ee also Moose v. Fraternal Order of Police*, 369 Md. 476, 482 (2002). If the circuit court finds "that [the] law enforcement agency obtained evidence against [the] officer in violation of a right granted by [the LEOBR], the court shall grant appropriate relief." § 3-105(c).

## FACTS AND PROCEEDINGS

In their circuit court action invoking section 3-105, the officers complained 1) that the CPD intended to introduce, at the hearing board trial, evidence against them that was obtained in violation of their Fourth Amendment rights; and 2) that the CPD was pursuing the charges against them in retaliation for their having exercised their First Amendment rights. We shall summarize the facts related to both assertions, which are to some extent overlapping.

4

From July 16 through 18, 2012, Officer Francis Schmidt, who worked with the Officers, was tried by a hearing board on charges that he was involved in an accident in his police vehicle, but did not report it. The Officers testified on Officer Schmidt's behalf. The trial resulted in an administrative decision to terminate Officer Schmidt's employment. Officer Schmidt filed an action for judicial review.

More than a year later, in November and December of 2013, the Officers were working second jobs for a seasonal Christmas tree business owned and operated by one Elmer Ray Lynn. They formed the security detail for Lynn at his office, which was located in a hotel room at the Howard Johnson's Hotel ("the Hotel") in Cheverly. On November 27, 2013, the CPD issued a memorandum to all officers directing that any secondary employment at the Hotel was to be restricted to the parking lot and lobby areas and that officers were not permitted to enter Lynn's office.

On December 8, 2013, the CPD opened an investigation into whether the Officers were violating the November 27, 2013 memorandum. In the course of the investigation, Sergeant Jarod Towers, the officer in charge, viewed video surveillance footage from the Hotel recorded between November 29, 2013, and December 18, 2013. It showed the Officers entering Lynn's hotel room on more than one occasion. It also showed the Officers socializing with other officers during hours that they were on-duty with the CPD. Sergeant Towers reviewed the daily duty log each Officer had completed at the end of each on-duty shift and determined that the Officers had made false entries on their logs. The entries documented that they were conducting official police business at the very times the video surveillance footage showed them at the Hotel, socializing.

5

On December 15, 2013, the Officers filed sworn affidavits in favor of Officer Schmidt in an EEOC case he had brought. In that case, Officer Schmidt was claiming that Chief Robshaw had unlawfully retaliated against him after he filed a workers' compensation claim.

On December 18, 2013, Lynn terminated both Officers' secondary employment.[5] The next day, the CPD issued a new memorandum to its officers prohibiting them from engaging in any secondary employment with Lynn's business.

On December 30, 2013, based on the information Sergeant Towers had obtained, the CPD installed global positional satellite ("GPS") tracking devices on the Officers' individually assigned police cruisers. The GPS devices were affixed without a warrant and without the Officers' knowledge or consent.[6]

In the meantime, Officer Schmidt had argued in his judicial review action that his hearing board had been improperly constituted because a police chief from another law enforcement agency had been a member. The circuit court agreed and on October 15, 2013, issued an order remanding the case for a new trial before a new hearing board. In that hearing board trial, in early March of 2014, the Officers again testified on behalf of

---

[5] The Officers claim they were terminated because the CPD's investigation was disrupting Lynn's business.

[6] It is not clear from the record whether the devices were installed on the exteriors or the interiors of the vehicles.

Officer Schmidt. On March 7, 2014, the hearing board issued a decision finding Officer Schmidt guilty on several charges.[7]

On July 23, 2014, the CPD served the Officers with Notices of Interrogation in connection with an investigation into allegations of conduct unbecoming, insubordination, false statements, false entry into public records, and neglect of duty over the period spanning November 23, 2013, through February 1, 2014. The notices stated that the CPD had initiated an investigation into the Officers' "conduct during the time [each was] engaged in secondary employment at the [Hotel] . . . and related to potential violations that include disobeying one or more direct orders, unauthorized use of police equipment and providing false information." The notices further stated that the CPD also was investigating whether the Officers had made "inaccurate and/or false" entries on their daily duty logs during January of 2014. The Officers were ordered to appear for an interrogation on August 6, 2014.

The Officers were served with amended Notices of Interrogation on August 5, 2014. The amended notices specified that the investigation into the period between November 23, 2013, and December 18, 2013, pertained to disobeying the memorandum directing officers not to enter any room at the Hotel and providing false statements to the dispatch officer regarding secondary employment at the Hotel. The investigation into the

---

[7] After Officer Schmidt was sanctioned, he brought an action for judicial review. The circuit court upheld the final agency decision. Officer Schmidt noted an appeal to this Court, which affirmed the circuit court's judgment. *See Schmidt v. Town of Cheverly Police Department*, No. 385, September Term, 2015 (filed March 2, 2016.)

period between January 1, 2014, and February 1, 2014, pertained to the "accuracy of entries . . . made . . . on the [daily duty logs] concerning . . . on-duty activities on approximately 15 dates and whether or not [the Officers] actually performed such duties."

On August 6, 2014, the Officers were interrogated separately, each with counsel present. That same day, the CPD suspended the Officers' police powers pending the outcome of the investigation. They were assigned administrative duties.

On September 4, 2014, the CPD served Stone with twelve disciplinary charges, based on allegations that he made false statements on his daily duty logs on dates between November 30, 2013, and January 31, 2014; neglected his duties during January of 2014; and disobeyed an order not to enter any hotel room at the Hotel. That same day, the CPD served Gizinski with eight disciplinary charges, based on allegations that he made false statements on his daily duty logs on dates between December 11, 2013, and January 31, 2014; submitted false house check sheets on January 11, 2014; neglected his duties between January 11, 2014, and January 31, 2014; and made a false statement to a police sergeant on December 11, 2013. Disciplinary action reports served on the Officers stated that the recommended sanction for the disciplinary charges was termination. On September 25, 2014, the CPD served Stone with notice of a thirteenth charge, which alleged an additional false entry in his daily duty log on or about December 1, 2013.

The Officers requested that the charges be tried before a hearing board. The trial was scheduled to commence on December 8, 2014.

8

At the end of November of 2014, the CPD withdrew three charges against Gizinski and four charges against Stone, holding them "in abeyance." The withdrawn charges all pertained to conduct during December of 2013 relating to secondary employment at the Hotel. Thus, the active charges all concerned conduct by the Officers in January of 2014, when the GPS tracking devices were being used.

At some point not revealed in the record, the hearing board trial date was postponed until February 2, 2015, at the request of the CPD.

On January 21, 2015, in the circuit court, the Officers filed a "Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and for Order to Show Cause" against the CPD and Chief Robshaw, citing section 3-105. They attached 45 exhibits. The complaint set forth six counts, but only Counts I and VI are relevant to this appeal. In Count I, the Officers alleged that the CPD had violated their Fourth Amendment rights by placing the GPS tracking devices on their police cruisers without a warrant and without their knowledge or consent. In Count VI, the Officers alleged that the disciplinary proceedings were brought against them in retaliation for their having exercised their First Amendment rights by testifying for Officer Schmidt at his hearing board trials and providing affidavits for him in his EEOC case, all in violation of section 3-103(d). The Officers asked for a show cause order and, ultimately, dismissal of the charges against them. They also sought to enjoin the hearing board trial from going forward until after a ruling by the circuit court.

On January 26, 2015, the court held a hearing. Stone's lawyer argued that the court should "issue the show cause order for a merits hearing to be held at a later date."

9

She represented that Stone had asked the hearing board to hold a full motions hearing in advance of trial, but the hearing board chairman had denied the request, ruling that any preliminary motions would be heard at the outset of the trial.

The court heard argument on all counts of the complaint and denied the request for a show cause order, to dismiss, and for injunctive relief. It addressed and ruled on the substantive issues raised by the Officers. As pertinent, it concluded, as a matter of law, that the Officers' Fourth Amendment rights were not violated because they had no reasonable expectation of privacy in their department-issued police cruisers. The court further concluded that whether the CPD had brought charges against the Officers in retaliation for their having exercised their First Amendment rights was a fact-intensive issue to be decided at the trial before the hearing board, not in a section 3-105 proceeding in the circuit court. On February 4, 2015, the court entered an order dismissing the complaint and denying the request for injunctive relief. The Officers immediately filed notices of appeal to this Court.[8] Meanwhile, on January 30, 2015, the Officers' hearing board trial was postponed until March 2, 2015.

On February 3, 2015, in the circuit court action, Stone (later joined by Gizinski) filed a motion to enjoin the trial before the hearing board pending a decision by this Court on appeal. On March 1, 2015, there being no ruling on the motion, Stone's lawyer

---

[8] Indeed, Stone's notice of appeal was filed on January 28, 2015, two days after the circuit court ruled but a week before the final order was entered. Pursuant to Rule 8-602(d), his appeal is treated as having been filed on February 4, 2015, following the entry of the order. Gizinski filed his notice of appeal on February 24, 2015.

emailed the hearing board, seeking a postponement of the trial until such time as the circuit court would rule on the injunction motion. That email also advised that Stone did not intend to participate in the trial before the hearing board if it went forward as scheduled. In an email sent the next day, Gizinski, through counsel, joined in the request for a postponement and advised that he also would not be participating in the trial. The hearing board denied the requests for postponement. Ultimately, by order entered on June 8, 2015, the circuit court denied the motion for injunction.

The trial before the hearing board proceeded as scheduled on March 2, 2015, and lasted until March 4, 2015. The Officers and their lawyers did not appear. The CPD dismissed the charges that were being held in abeyance. It introduced 57 exhibits and, as relevant to the instant appeal, called two witnesses.[9] The evidence against Stone pertained to charges that he had made false entries on his daily duty logs on January 11, 2014 (Charge 1), January 12, 2014 (Charge 2), January 16, 2014 (Charge 3), January 17, 2014 (Charge 4), January 22, 2014 (Charge 5); January 25, 2014 (Charge 6), and January 31, 2014 (Charge 7); and that these false entries amounted to a course of conduct of not performing duties while falsely documenting productivity (Charge 8). The evidence against Gizinski pertained to charges that he had made false entries in his daily duty logs on January 11, 2014 (Charge 1), January 16, 2014 (Charge 2), January 17, 2014 (Charge 3), January 22, 2014 (Charge 4), and January 31, 2014 (Charge 5); and that these false

---

[9] The hearing board also heard two new charges against Gizinski that had been served on him in August of 2014. The CPD called two witnesses to testify about those charges. Those charges are not at issue in the instant appeal.

entries likewise amounted to a course of conduct of not performing duties while falsely documenting productivity (Charge 6).

The CPD introduced GPS tracking evidence showing that, at particular times on the dates that the Officers had documented that they were making premises checks and performing other official police duties, their police cruisers were parked for hours at a time at locations with no connection to the documented work. Many of the locations were convenience stores. One of the locations was Prince George's Hospital, which is not within the Town limits.

On March 23, 2015, the hearing board issued a 47-page written decision. It found the Officers guilty on all charges. In a separate proceeding, the hearing board recommended sanctions ranging from a reduction in rank to suspension without pay for the charges of false entries on the daily duty logs and the sanction of termination for the course of conduct charges.

Chief Robshaw notified the Officers that he was considering increasing the recommended penalty for Charges 1 through 7 against Stone and for Charges 1 through 5 against Gizinski. He scheduled a meeting with the Officers and their lawyers for April 7, 2015. *See* § 3-108(d) (stating that the recommended penalty is not binding on the chief of police and detailing the steps he or she must take to increase the penalty). They did not attend.

On April 14, 2015, Chief Robshaw issued the final written agency decision imposing termination as a sanction for each charge against each Officer. As mentioned above, neither Officer filed an action for judicial review.

# DISCUSSION

As the above chronology discloses, the circuit court entered its order denying the Officers' complaint under section 3-105 on February 4, 2015, before the hearing board trial commenced; and the Officers noted this appeal before the hearing board trial commenced. On March 3, 2015, the Town filed a motion to dismiss the appeal, arguing that the circuit court's order was not a final judgment and therefore was not appealable, and that, because the circuit court entered its order denying relief under section 3-105 before the hearing board trial commenced, the Officers failed to exhaust their administrative remedies by not participating in the hearing board trial. The Town supplemented its motion on March 27, 2015, after the hearing board issued its written decision but before Chief Robshaw issued the final agency decision.

The Officers opposed the motion to dismiss the appeal, arguing that the order denying their complaint to show cause (and their attendant request for injunctive relief) either was a final judgment or was an appealable interlocutory order denying a request for an injunction. *See* Md. Code (1974, 2013 Repl. Vol.), section 12-303(3)(iii) of the Courts and Judicial Proceedings Article. They filed a motion seeking to have this Court issue an injunction to prevent the hearing board and Chief Robshaw from imposing any disciplinary sanction during the pendency of the appeal. The Town filed an opposition.

By order dated April 24, 2015, this Court denied the Town's motion to dismiss the appeal and the Officers' motion for injunction.

On November 3, 2015, the Town filed its brief, which includes a second motion to dismiss the appeal. In that motion, the Town repeats the arguments raised in its first

13

motion, and adds that the appeal has been rendered moot by the final agency decision terminating the Officers' employment or that the Officers waived the arguments they advance on appeal by failing to raise them in the trial before the hearing board.

In their reply briefs, the Officers oppose the second motion to dismiss, arguing that the Town is precluded from filing a second motion to dismiss the appeal, under the doctrine of collateral estoppel; the circuit court's February 4, 2015 order was an appealable final judgment; and they were not required to exhaust their administrative remedies before noting an appeal from the circuit court's ruling denying the relief they requested under section 3-105.

For the reasons to follow, we shall dismiss this appeal for failure to exhaust administrative remedies.[10]

---

[10] There is no merit to the argument that this Court's April 24, 2015 order denying the Town's motion to dismiss is binding on this panel. First, generally, a case before this Court "shall be heard by a panel of not less than three judges" and shall be decided by the "concurrence of a majority of [the] panel." Md. Code (1973, 2013 Repl. Vol., 2015 Supp.), § 1-403(b) of the Courts and Judicial Proceedings Article. For any of the reasons given in Rule 8-602(a), an appeal may be dismissed by "the Court" "[o]n motion or on its own initiative." Md. Rule 8-602(a). "An order of the Court dismissing an appeal or denying a motion to dismiss an appeal may be entered by the Chief Judge, an individual judge of the Court designated by the Chief Judge, or the number of judges required by law to decide an appeal." Md. Rule 8-602(b). (If a motion for reconsideration of an order dismissing an appeal is filed, it must be decided by the number of judges required by law to decide an appeal, except that the order may be rescinded by the individual judge who entered it. Md. Rule 8-602(c)(2)). Thus, an order of the Chief Judge or an individual judge of the Court *denying* a motion to dismiss an appeal is interlocutory, because the appeal will be heard by a three judge panel and ultimately will be decided by at least a concurrence of that panel.

Second, collateral estoppel has no application here, as that doctrine concerns issue preclusion in separate cases. *See Welsh v. Gerber Products, Inc.*, 315 Md. 510, 516

(Continued…)

14

In *MTA v. Hayden*, 141 Md. App. 100 (2001), an MTA transit officer who was charged with misconduct elected to be tried by a hearing board. In advance of trial, he asked the hearing board to subpoena the hearing board chairperson as a witness in his case. The hearing board denied the request, finding that it was an attempt by the officer to create a conflict so a new chairperson would have to be appointed. In the circuit court, the officer filed a petition for show cause order pursuant to section 3-105 (then section 734 of Article 27 of the Maryland Code). The circuit court entered an order directing the MTA to show cause why the subpoena should not be issued, and the MTA responded, arguing that the officer was not entitled to the requested subpoena. The court did not schedule a hearing and held the matter *sub curia*.

Meanwhile, the hearing board trial went forward. The officer and his lawyer declined to participate. The hearing board found the officer guilty of the charges and recommended a two-week suspension. The MTA Chief adopted that recommendation, and issued the final agency decision. The officer did not file an action for judicial review.

(…continued)
(1989) (collateral estoppel applies in "a *second suit* between the same parties" to preclude the relitigation of any determinations of fact conclusively decided in the prior suit) (emphasis added).

Finally, it is well-established that an appellate court in Maryland can dismiss an appeal on its own, for failure to exhaust administrative remedies; therefore, it does not matter whether the Town filed motions to dismiss at all on this ground or whether the motions were denied before the case was heard and decided by this panel. *See Montgomery Cnty. v. Broadcast Equities, Inc.*, 360 Md. 438, 450-51 n.7 (2000) (Appellate court may address, *sua sponte*, "an issue concerning exhaustion of an administrative remedy.").

A year later, the circuit court finally issued a ruling on the substance of the officer's section 3-105 show cause petition. It found that the hearing board had wrongly denied the officer's request to subpoena the hearing board chairperson. It entered an order vacating the final agency decision and remanding the case for a new trial before a new hearing board.

The MTA noted an appeal from the circuit court's order. It argued that the section 3-105 proceeding had been rendered moot by the final agency decision, and that the officer had failed to exhaust his administrative remedies by declining to participate in the hearing board trial and by not filing an action for judicial review to challenge the final agency decision.

We held that the final agency decision did not render the section 3-105 proceeding moot, stating that, to hold otherwise would "defeat the 'pre-hearing review' purpose of [section 3-105]." *Id*. at 112. We reasoned that, because the purpose of that statute is "'to assure that the police agency *will do* what the law requires,'" it "mandate[s] that the circuit court's . . . decision [on a section 3-105 petition], rather than the administrative decision handed down in the meantime, govern the outcome." *Id*. (quoting *Cochran v. Anderson*, 73 Md. App. 604, 613 (1988)). In other words, the circuit court's decision under section 3-105, albeit delayed, took precedence over the agency decision rendered during the period of delay. The MTA proceeded with the hearing board trial, *before* the circuit court ruled on the section 3-105 petition, "at the risk of the court vacating any administrative decision resulting from the challenged proceeding." *Id*. at 113. Rejecting the MTA's argument that the officer's show cause petition was an attempt "to by-pass

16

MTA administrative proceedings," we held that the LEOBR's show cause provision is a "statutory exception to the doctrine of exhaustion of administrative remedies" and plainly entitled the officer to seek the relief he did. *Id*. We affirmed the circuit court's ruling on the merits.

In *Hayden*, the hearing board trial was held *after* the officer filed his section 3-105 proceeding in the circuit court but *before* the court ruled on it. The court had not yet decided whether the officer was entitled to subpoena the chairperson to appear before the hearing board when the hearing board trial was held. In the case at bar, unlike in *Hayden*, the hearing board trial was held *after* the circuit court ruled on the Officers' complaint under section 3-105. Even though they had obtained a ruling from the court on their section 3-105 complaint in advance of the hearing board trial, as section 3-105 entitled them to obtain, the Officers declined to participate in the trial.

The Officers maintain that, because section 3-105 is an exception to the rule that administrative remedies must be exhausted, they are entitled to appellate review of the circuit court's section 3-105 ruling and to have the final agency decision vacated if the circuit court's ruling was incorrect, even though they did not participate in the hearing board trial. In their view, it makes no difference that here, unlike in *Hayden,* the circuit court ruled on their section 3-105 request for relief in advance of the hearing board trial. They reason that, because they noted an appeal from the circuit court's ruling before the hearing board trial took place, they can receive the benefit of any reversal by this Court of the circuit court's ruling, *i.e.,* a new hearing board trial, notwithstanding that they did not participate in the agency proceeding. Presumably, only after a decision by this Court,

17

and the denial of a petition for writ of *certiorari* or, if such a petition were granted, a decision by the Court of Appeals, would they be required to participate in a hearing board trial.

We disagree. In the case at bar, the "'pre-hearing review'" purpose of section 3-105 was accomplished. *Hayden*, 141 Md. App. at 112. The circuit court ruled on the issues raised by the Officers in advance of the hearing board trial. To be sure, the ruling did not favor them; but the court's decision "govern[ing] the outcome" was made. *Id.* at 112. That decision was that the GPS evidence was not inadmissible on Fourth Amendment grounds and whether the investigation that led to the charges against the Officers was retaliation for their having exercised their First Amendment rights by testifying on behalf of Officer Schmidt was a factual issue that the hearing board, not the circuit court, should decide.[11]

The circuit court's decision, embodied in its February 4, 2015 order, was appealable as a final judgment. *See, e.g., DiGrazia v. Cnty. Exec. for Montgomery Cnty.*, 288 Md. 437 (1980) (appeal from circuit court decision granting summary judgment in favor of the county executive on an officer's petition for show cause); *Blondell*, 341 Md. at 680 (appeal from circuit court's grant of judgment in favor of police department on officer's petition for show cause); *Miller v. Baltimore Cnty. Police Dep't*, 179 Md. App.

---

[11] We note, with respect to the Fourth Amendment issue, that section 3-105 only authorizes a circuit court to grant appropriate relief upon a finding that the agency "*obtained evidence* against a law enforcement officer *in violation of a right granted by this subtitle*," *i.e.,* by the LEOBR. (Emphasis added.) A Fourth Amendment violation, if there were one, is not a violation of a right granted by the LEOBR.

370 (2008) (appeal from decision of the circuit court dismissing officer's petition for show cause). And the Officers could exercise their right to challenge the court's decision on appeal. What they could not do, however, was pursue that challenge and, having received a decision from the circuit court in advance of the hearing board trial, fail to participate in that administrative proceeding. In *Hayden*, the MTA officer's failure to participate in the hearing board trial was without prejudice to him because the MTA pushed forward with the trial *before* the circuit court ruled on the issue the officer was entitled to have the court decide in advance of trial. That is not the case here.

Among the reasons the Court of Appeals has articulated to support the rule requiring exhaustion of administrative remedies are that "permit[ting] interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance"; and "the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed." *Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526 (1976); *see also Moose*, 369 Md. at 487. These reasons are implicated here.

While the section 3-105 circuit court process entitles an officer to obtain a ruling from the circuit court that will be implemented at the hearing board trial, it does not entitle him to delay the hearing board trial until any appellate challenges to the circuit court's ruling have been exhausted. If the circuit court's ruling is determined, on appeal, to have been in error, and the officer was found guilty in a hearing board trial in which he participated and in which the circuit court's ruling was implemented, the officer will be

19

afforded a new hearing board trial. If the officer is not found guilty in those circumstances, a new trial will not be necessary and the appeal will be moot. The officer must exhaust his administrative remedies, however, and not sit back without doing anything after receiving the process afforded by section 3-105.

The Officers obtained a ruling from the circuit court but did not thereafter exhaust their administrative remedy under the LEOBR. Accordingly, they are bound by the hearing board's findings of guilt and the sanctions imposed against them, regardless of their challenge to the substance of the circuit court's ruling on the section 3-105 proceeding.[12,13]

---

[12] The Officers have filed a motion for reargument, based on an order of this Court issued on December 18, 2015. The order granted a motion for reconsideration filed by Gizinski, accepting a late-filed brief. The Town had moved to dismiss Gizinski's appeal for failure to file a brief. The last line of the December 18, 2015 order states, "Appellee's Motion to Dismiss be and hereby is denied." The Officers maintain that this was a denial by this Court of the motion to dismiss in the Town's brief; and because the motion had been denied, they did not expect to be questioned at oral argument about the subject of the motion, and because they were, they did not have time to address their substantive appeal issues. The language in the December 18, 2015 order did not concern the motion to dismiss in the Town's brief. It concerned the Town's motion to dismiss Gizinski's appeal for failure to file a brief. And, for the reasons we have explained, the Officers should have understood that the issues raised in the Town's motion to dismiss in its brief were not finally decided by the April 24, 2015 order and, especially with respect to the exhaustion issue, which the Court can raise on its own, questions would be coming from the bench. Of course, there is no restriction on questions that may be posed by the Court during oral argument. Moreover, we are deciding this case on the issue that the Officers had ample opportunity to address at oral argument and not on the issues they complain they did not have time to cover. The motion to reargue is denied.

[13] The Town has moved to strike portions of the record extract and the appendix to Stone's brief. We will grant the motion to strike pages 7-8 of the appendix to Stone's

(Continued…)

20

**APPEAL DISMISSED.  COSTS TO BE PAID BY THE APPELLANTS.**

---

(…continued)

brief, but otherwise deny the motion.  Pages 7-8 are an article about GPS tracking and how it works that was not in evidence and was not attached to the complaint.